D. C. DUNCAN (Employee) v. CARPENTER AND PHILLIPS (Employer) AND COAL OPERATORS CASUALTY COMPANY (Carrier).

(Filed 11 April, 1951.)

**1. Master and Servant § 40f—**

In recognition of the insidious character of asbestosis and silicosis, the Legislature has provided that disablement from such diseases means the event of becoming actually incapacitated by such diseases from performing normal labor in the last occupation in which the employee was remuneratively employed; but that in all other cases of occupational disease "disablement" should be equivalent to "disability" and should mean incapacity because of injury to earn wages which the employee was receiving at the time of the injury in the same or any other employment. G.S. 97-54, G.S. 97-2 (i).

**2. Statutes § 5d—**

Statutes *in pari materia* are to be construed together reconciling them so that no part of either statute should be meaningless, and where the language is ambiguous the courts must construe it to determine the true legislative intent.

DUNCAN v. CARPENTER.

**3. Statutes § 5a—**

Where a strict, literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the reason and purpose of the law should control, and the strict letter thereof should be disregarded.

**4. Master and Servant § 40f—**

In order to be compensable, disablement from asbestosis, silicosis and lead poisoning must occur within two years from the last exposure to the hazards of the respective diseases. G.S. 97-58 (a).

**5. Master and Servant § 43—**

A claim for compensation for disablement resulting from asbestosis, silicosis or lead poisoning is not barred if filed within one year from the date the employee has been advised by competent medical authority that he has such disease, notwithstanding that the disablement may have existed from the time the employee quit work more than a year prior to the filing of claim. G.S. 97-58 (b) (c).

APPEAL by plaintiff from *Armstrong, J.,* September Term, 1950, of MITCHELL.

This is a proceeding for compensation under the provisions of the North Carolina Workmen's Compensation Act, for disability due to silicosis.

The facts are not in dispute and may be summarized as follows:

1. It is stipulated and agreed that the parties are subject to and bound by the provisions of the North Carolina Workmen's Compensation Act, and that the defendant Coal Operators Casualty Company became the insurance carrier of its codefendant on 30 June, 1947, and has continued as such carrier since that time.

2. That on and prior to 23 April, 1948, the plaintiff was regularly employed by the defendant employer at an average weekly wage of $44.00; that the plaintiff has been exposed to silica dust in North Carolina for two years or more during the last ten years and was exposed to silica dust for as much as thirty working days or parts thereof within the seven consecutive calendar months immediately preceding the month of April, 1948.

3. It was further found as a fact from the Case History and Medical Report on the plaintiff, prepared by Dr. Otto J. Swisher, Director of the Division of Industrial Hygiene, North Carolina State Board of Health, "that he was employed in dusty trades for Carolina Minerals from 1912-1917 as foreman; by Clinchfield Products Company, 1918-1922, and it was determined by an examination on August 5, 1935, that the plaintiff had pulmonary tuberculosis, adult type. The plaintiff continued his labors in the dusty trades as foreman and driller in spar mines, and an examination on November 17, 1936, revealed 'usual fibrosis with healed

adult type of tuberculosis.' His next examination was on September 12, 1946, while employed by the defendant in this case and at a time when he had been shearing mica for approximately one year inside the plant. This examination disclosed no change since his last examination with the exception of 'probably a little more fibrosis than usual.' The plaintiff's next examination on May 17, 1949, disclosed a cough which he had had for eighteen months, hacking in the daytime and productive mostly in the early morning, shortness of breath upon the slightest exertion, which condition seemed to be getting worse, sore lungs. The final diagnosis was 'tuberculosis moderately advanced activity questionable with early silicosis II.' "

4. The plaintiff, by reason of his physical condition, quit work in 1948 for about a month, and returned thereafter to his job for about two months, and finally quit in April of that year.

5. That the plaintiff was first advised by competent medical authority that he had silicosis on or about 29 November, 1948.

6. That the plaintiff is actually incapacitated because of silicosis from performing normal labor in the last occupation in which remuneratively employed, and is thus disabled within the meaning of G.S. 97-54; that such disablement occurred at the time of the plaintiff's last exposure on 23 April, 1948.

7. That the plaintiff filed his claim with the North Carolina Industrial Commission for compensation on 25 April, 1949.

Upon the facts found from the evidence and the stipulations, the hearing Commissioner concluded as a matter of law that the plaintiff filed his claim in time, and was entitled to compensation, and made an award as provided in G.S. 97-29, reduced by reason of his tubercular condition, as provided in G.S. 97-65.

The defendants appealed to the Full Commission, which affirmed the opinion and award of the hearing Commissioner. On appeal therefrom to the Superior Court, his Honor held as a matter of law that the plaintiff did not file his claim with the Industrial Commission within one year after his disablement, and was, therefore, not entitled to compensation and entered judgment accordingly.

The plaintiff appeals and assigns error.

*McBee & McBee and W. E. Anglin for plaintiff.*
*Proctor & Dameron for defendants.*

DENNY, J. The only question for decision is whether upon the facts in this case the plaintiff filed his claim with the Industrial Commission in time, in light of the provisions of G.S. 97-58, which read as follows:

"(a) An employer shall not be liable for any compensation for asbestosis, silicosis or lead poisoning unless disablement or death results within two years after the last exposure to such disease, or, in case of death, unless death follows continuous disability from such disease, commencing within the period of two years limited herein, and for which compensation has been paid or awarded or timely claim made as hereinafter provided and results within seven years after such last exposure.

"(b) The report and notice to the employer as required by Sec. 97-22 shall apply in all cases of occupational disease except in case of asbestosis, silicosis, or lead poisoning. The time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has same.

"(c) The right to compensation for occupational disease shall be barred unless a claim be filed with the industrial commission within one year after death, disability or disablement as the case may be."

It is well to note that our Legislature has recognized the insidious character of asbestosis and silicosis. Every employer in whose business his employees or any of them are subjected to the hazards of asbestosis or silicosis, is required, by G.S. 97-60, to provide prior to employment necessary examinations of all new employees for the purpose of ascertaining if any of them are in any degree affected by asbestosis or silicosis or peculiarly susceptible thereto; and every such employer shall from time to time, as ordered by the Industrial Commission provide similar examinations for all of his employees whose employment exposes them to the hazards of asbestosis or silicosis. And where an employee, though not actually disabled, is found by the Industrial Commission to be affected by asbestosis or silicosis, and such disease has progressed to such a degree as to make it hazardous for him to continue in his employment, the Industrial Commission may require his removal therefrom. G.S. 97-61.

Furthermore, when compensation payments have been made and discontinued, and further compensation is claimed, whether for disablement, disability, or death from asbestosis, silicosis, or lead poisoning, the claim for such further compensation may be made within two years, but as to all other occupational diseases claim for further compensation shall be made within one year after the last payment. G.S. 97-66.

It should also be kept in mind that there is a distinction between the words "disablement" and "disability," when used in connection with certain occupational diseases, under the provisions of our Workmen's Compensation Act. Disablement "as applied to cases of asbestosis and silicosis, means the event of becoming actually incapacitated, because of such occupational disease, *from performing normal labor in the last occupation in which remuneratively employed;* but in all other cases of occupational disease shall be equivalent to 'disability' as defined in Section

DUNCAN *v.* CARPENTER.

97-2 (i)." G.S. 97-54. Disability, as defined in Section 97-2 (i), "means incapacity because of injury to earn wages *which the employee was receiving at the time of injury in the same or any other employment." Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797.

The appellees seriously contend that in passing G.S. 97-58 (b), the intent of the Legislature is obvious. Thirty days is not, in the average case, sufficient time for an employee to discover, with certainty, that he is suffering from an occupational disease. Such diseases, by their nature, are gradual in their development and difficult of diagnosis. Consequently, the Legislature relieved the employee of the necessity of giving any notice pursuant to the provisions of G.S. 97-22, to the employer in cases of asbestosis, silicosis and lead poisoning, and extended the time for giving the notice in all other cases of occupational diseases to thirty days after the employee was advised by competent medical authority that he was suffering from an occupational disease.

The appellees further contend that subsection (b) applies only to the notice to be given the employer, and does not in any way affect or extend the time in which notice and claim of death, disability or disablement must be filed with the Industrial Commission, as provided in subsection (c) of the statute.

If we concede this to be a correct interpretation of the statute, then the Legislature did a vain and useless thing when it enacted subsection (c) of the statute. For such an interpretation would make the time for filing a claim for compensation for an occupational disease identical with that fixed for filing a claim for an accident, resulting in injury or death, as provided in G.S. 97-24, irrespective of the date the employee was advised by competent medical authority that he had such disease.

Statutes *in pari materia* are to be construed together and where the language is ambiguous, the court must construe it to ascertain the true legislative intent. *Young v. Whitehall Co., supra; Mullen v. Town of Louisburg,* 225 N.C. 53, 33 S.E. 2d 484; *Supply Co. v. Maxwell, Comr. of Revenue,* 212 N.C. 624, 194 S.E. 117; *S. v. Humphries,* 210 N.C. 406, 186 S.E. 473. And where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the reason and purpose of the law should control, and the strict letter thereof should be disregarded. *S. v. Barksdale,* 181 N.C. 621, 107 S.E. 505.

In our opinion, by enacting G.S. 97-58, subsections (a), (b) and (c), the Legislature intended to authorize the filing of a claim for compensation for asbestosis, silicosis or lead poisoning where disablement occurs within two years after the last exposure to such disease; and, although disablement may have existed from the time the employee quit work, such disablement, for the purpose of notice and claim for compensation, should

date from the time the employee was notified by competent medical authority that he had such disease. This view is supported by decisions from other jurisdictions, among them being *Roschak v. Vulcan Iron Works*, 157 P. Super. 227, 42 A. 2d 280, citing *Blassingame v. Asbestos Co.*, 217 N.C. 223, 7 S.E. 2d 478; *Consolidated Coal Co. v. Porter* (Maryland), 64 A. 2d 715; *Free v. Associated Indemnity Corp.*, 78 Ga. 839, 52 S.E. 2d 325; *Marsh v. Industrial Accident Commission*, 217 Cal. 338, 18 P. 2d 933, 86 A.L.R. 563; *Greener v. E. I. DuPont De Nemours & Co.*, 188 Tenn. 303, 219 S.W. 2d 185. Were we to rule otherwise, it would be necessary to hold that it was the legislative intent to require an employee, in many instances, suffering from any one of these occupational diseases to make a correct medical diagnosis of his own condition or to file his notice and claim for compensation before he knew he had such disease, or run the risk of having his claim barred by the one year statute.

It follows, however, as a matter of course, that the finding of the competent medical authority must be to the effect that disablement occurred within two years from the last exposure in cases of asbestosis, silicosis and lead poisoning, and in claims involving other occupational diseases that disability occurred within one year thereof.

Now, in applying the above construction to the facts disclosed on this record, let us review briefly the pertinent evidence with respect to the physical condition of the plaintiff prior to the hearing below. There is no evidence in this record that tends to show the plaintiff ever lost any time from his work on account of his physical condition prior to 1948. In fact, a work card, good in dusty trades, was issued to him on 28 January, 1947. Moreover, Dr. Swisher, the Director of the Division of Industrial Hygiene, a department of the State Board of Health, created for the purpose of making periodic examination of persons exposed to the hazards of occupational diseases, testified "the first date on which my examination revealed that the plaintiff had silicosis *disabling in its nature and extent was 17 May, 1949.* I had examined him on 12 September, 1946. At that time it could not be definitely determined if any silicotic pathology was present."

Likewise, Dr. C. D. Thomas, Medical Director of the Western North Carolina Sanitorium at Black Mountain, testified "the plaintiff was examined at the Sanitorium on 22 August, 1949. It is my opinion that the plaintiff had silicosis as we usually list moderately advanced, grade 2, with no tuberculosis. I examined an X-ray taken by Dr. Webb, on 29 November, 1948. This showed the presence of tuberculosis, but not active. It is my opinion that the plaintiff was disabled, due to silicosis, from doing normal labor in his last occupation in which he was remuneratively employed."

The plaintiff in his testimony said: "I was sick when I came from the mines. I did not know what was wrong. The first notice to me that I had silicosis was from Dr. Thomas on 29 November, 1948."

Thus the record reveals that from the periodic examinations of the plaintiff by the Division of Industrial Hygiene, it was not ascertained that the plaintiff was suffering from silicosis until 17 May, 1949, twenty-three days after he had filed his notice and claim for compensation with the Industrial Commission, pursuant to the information he had received from Dr. Thomas on or about 29 November, 1948. And while Dr. Thomas notified the plaintiff, on or about 29 November, 1948, that he had silicosis, there is nothing in his testimony that would tend to show that he had concluded that the disease had progressed to the extent of preventing the plaintiff from doing normal labor in the last occupation in which he was remuneratively employed, until he was examined at the Sanitorium on 22 August, 1949.

In light of this evidence, we hold that the plaintiff was entitled to file his notice and claim for compensation at any time within one year from the time he was notified by Dr. Thomas that he had silicosis. This is a case of first impression with us, involving this particular statute, but we think the construction we have given it is in keeping with the spirit and purpose of the law.

The judgment of the court below is reversed and the cause remanded for judgment, in accord with this opinion.

Reversed.