64 S.E.2d 410 (1951)
233 N.C. 422
DUNCAN
v.
CARPENTER & PHILLIPS et al.
No. 236.
Supreme Court of North Carolina.
April 11, 1951.
*412 McBee & McBee, Spruce Pine, and W. E. Anglin, Burnsville, for plaintiff.
Proctor & Dameron, Marion, for defendants.
DENNY, Justice.
The only question for decision is whether upon the facts in this case the plaintiff filed his claim with the Industrial Commission in time, in light of the provisions of G.S. § 97-58, which read as follows:
"(a) An employer shall not be liable for any compensation for asbestosis, silicosis or lead poisoning unless disablement or death results within two years after the last exposure to such disease, or, in case of death, unless death follows continuous disability from such disease, commencing within the period of two years limited herein, and for which compensation has been paid or awarded or timely claim made as hereinafter provided and results within seven years after such last exposure.
"(b) The report and notice to the employer as required by § 97-22 shall apply in all cases of occupational disease except in case of asbestosis, silicosis, or lead poisoning. The time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has same.
"(c) The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within one year after death, disability, or disablement as the case may be."
It is well to note that our Legislature has recognized the insidious character of asbestosis and silicosis. Every employer in whose business his employees or any of them are subjected to the hazards of asbestosis *413 or silicosis, is required, by G.S. § 97-60, to provide prior to employment necessary examinations of all new employees for the purpose of ascertaining if any of them are in any degree affected by asbestosis or silicosis or peculiarly susceptible thereto; and every such employer shall from time to time, as ordered by the Industrial Commission provide similar examinations for all of his employees whose employment exposes them to the hazards of asbestosis or silicosis. And where an employee, though not actually disabled, is found by the Industrial Commission to be affected by asbestosis or silicosis, and such disease has progressed to such a degree as to make it hazardous for him to continue in his employment, the Industrial Commission may require his removal therefrom. G.S. § 97-61.
Furthermore, when compensation payments have been made and discontinued, and further compensation is claimed, whether for disablement, disability, or death from asbestosis, silicosis, or lead poisoning, the claim for such further compensation may be made within two years, but as to all other occupational diseases claim for further compensation shall be made within one year after the last payment. G.S. § 97-66.
It should also be kept in mind that there is a distinction between the words "disablement" and "disability", when used in connection with certain occupational diseases, under the provisions of our Workmen's Compensation Act. Disablement "as applied to cases of asbestosis and silicosis means the event of becoming actually incapacitated, because of such occupational disease, from performing normal labor in the last occupation in which remuneratively employed; but in all other cases of occupational disease shall be equivalent to `disability' as defined in § 97-2, paragraph (i)." G.S. § 97-54. Disability, as defined in Section 97-2(i) "means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Young v. Whitehall Co., 229 N.C. 360, 49 S.E.2d 797.
The appellees seriously contend that in passing G.S. § 97-58(b), the intent of the Legislature is obvious. Thirty days is not, in the average case, sufficient time for an employee to discover, with certainty, that he is suffering from an occupational disease. Such diseases, by their nature, are gradual in their development and difficult of diagnosis. Consequently, the Legislature relieved the employee of the necessity of giving any notice pursuant to the provisions of G.S. § 97-22, to the employer in cases of asbestosis, silicosis and lead poisoning, and extended the time for giving the notice in all other cases of occupational diseases to thirty days after the employee was advised by competent medical authority that he was suffering from an occupational disease.
The appellees further contend that subsection (b) applies only to the notice to be given the employer, and does not in any way affect or extend the time in which notice and claim of death, disability or disablement must be filed with the Industrial Commission, as provided in subsection (c) of the statute.
If we concede this to be a correct interpretation of the statute, then the Legislature did a vain and useless thing when it enacted subsection (c) of the statute. For such an interpretation would make the time for filing a claim for compensation for an occupational disease identical with that fixed for filing a claim for an accident, resulting in injury or death, as provided in G.S. § 97-24, irrespective of the date the employee was advised by competent medical authority that he had such disease.
Statutes in pari materia are to be construed together and where the language is ambiguous, the court must construe it to ascertain the true legislative intent. Young v. Whitehall Co., supra; Mullen v. Town of Louisburg, 225 N.C. 53, 33 S.E.2d 484; Atlas Supply Co. v. Maxwell, Com'r of Revenue, 212 N.C. 624, 194 S.E. 117; State v. Humphries, 210 N.C. 406, 186 S.E. 473. And where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the reason and purpose of *414 the law should control, and the strict letter thereof should be disregarded. State v. Barksdale, 181 N.C. 621, 107 S.E. 505.
In our opinion, by enacting G.S. § 97-58, subsections (a), (b) and (c), the Legislature intended to authorize the filing of a claim for compensation for asbestosis, silicosis or lead poisoning where disablement occurs within two years after the last exposure to such disease; and, although disablement may have existed from the time the employee quit work, such disablement, for the purpose of notice and claim for compensation, should date from the time the employee was notified by competent medical authority that he had such disease. This view is supported by decisions from other jurisdictions, among them being Roschak v. Vulcan Iron Works, 157 Pa.Super. 227, 42 A.2d 280, citing Blassingame v. Southern Asbestos Co., 217 N.C. 223, 7 S.E.2d 478; Consolidated Coal Co. v. Porter, Md., 64 A.2d 715; Free v. Associated Indemnity Corp., 78 Ga. 839, 52 S.E.2d 325; Marsh v. Industrial Accident Commission, 217 Cal. 338, 18 P.2d 933, 86 A.L.R. 563; Greener v. E. I. DuPont De Nemours & Co., 188 Tenn. 303, 219 S.W. 2d 185. Were we to rule otherwise, it would be necessary to hold that it was the legislative intent to require an employee, in many instances, suffering from any one of these occupational diseases to make a correct medical diagnosis of his own condition or to file his notice and claim for compensation before he knew he had such disease, or run the risk of having his claim barred by the one year statute.
It follows, however, as a matter of course, that the finding of the competent medical authority must be to the effect that disablement occurred within two years from the last exposure in cases of asbestosis, silicosis and lead poisoning, and in claims involving other occupational diseases that disability occurred within one year thereof.
Now, in applying the above construction to the facts disclosed on this record, let us review briefly the pertinent evidence with respect to the physical condition of the plaintiff prior to the hearing below. There is no evidence in this record that tends to show the plaintiff ever lost any time from his work on account of his physical condition prior to 1948. In fact a work card, good in dusty trades, was issued to him on January 28, 1947. Moreover, Dr. Swisher, the Director of the Division of Industrial Hygiene, a department of the State Board of Health, created for the purpose of making periodic examination of persons exposed to the hazards of occupational diseases, testified "the first date on which my examination revealed that the plaintiff had silicosis disabling in its nature and extent was 17 May, 1949. I had examined him on 12 September, 1946. At that time it could not be definitely determined if any silicotic pathology was present."
Likewise, Dr. C. D. Thomas, Medical Director of the Western North Carolina Sanatorium at Black Mountain, testified "the plaintiff was examined at the Sanatorium on 22 August, 1949. It is my opinion that the plaintiff had silicosis as we usually list moderately advanced, grade 2, with no tuberculosis. I examined an X-ray taken by Dr. Webb, on 29 November, 1948. This showed the presence of tuberculosis, but not active. It is my opinion that the plaintiff was disabled, due to silicosis, from doing normal labor in his last occupation in which he was remuneratively employed."
The plaintiff in his testimony said: "I was sick when I came from the mines. I did not know what was wrong. The first notice to me that I had silicosis was from Dr. Thomas on 29 November, 1948."
Thus the record reveals that from the periodic examinations of the plaintiff by the Division of Industrial Hygiene, it was not ascertained that the plaintiff was suffering from silicosis until May 17, 1949, twenty-three days after he had filed his notice and claim for compensation with the Industrial Commission, pursuant to the information he had received from Dr. Thomas on or about November 29, 1948. And while Dr. Thomas notified the plaintiff, on or about November 29, 1948, that he had silicosis, there is nothing in his testimony that would tend to show that he had concluded that the disease had progressed to the extent of preventing the plaintiff from *415 doing normal labor in the last occupation in which he was remuneratively employed, until he was examined at the Sanitarium on August 22, 1949.
In light of this evidence, we hold that the plaintiff was entitled to file his notice and claim for compensation at any time within one year from the time he was notified by Dr. Thomas that he had silicosis. This is a case of first impression with us, involving this particular statute, but we think the construction we have given it is in keeping with the spirit and purpose of the law.
The judgment of the court below is reversed and the cause remanded for judgment, in accord with this opinion.
Reversed.