JACK HUSKINS, EMPLOYEE, v. UNITED FELDSPAR CORPORATION (EMPLOYER) ; COAL OPERATORS CASUALTY COMPANY (CARRIER).

(Filed 24 November, 1954.)

**1. Master and Servant §§ 40f, 43—**

A workman, whatever his actual physical condition may be, is not charged with notice that he has silicosis until and unless he is so advised by competent medical authority, and the time within which he must file his claim for compensation begins to run from the date he is so advised. G.S. 97-58 (b).

**2. Master and Servant § 40f—**

In order to support recovery of compensation for silicosis, there must be medical expert testimony that claimant was disabled as a result of this disease and that such diability occurred within two years from the last exposure to the hazards of silica dust. G.S. 97-54 (a).

**3. Same—Evidence held insufficient to support finding that disability from silicosis occurred within two years from last exposure.**

The evidence before the Industrial Commission was to the effect that claimant left his employment as a "mucker" in a mica mine because of

shortness of breath, that he thereafter worked regularly at several employments at a much higher wage, and was thus gainfully employed at the time of the hearing. There was medical expert testimony based upon examination almost six years after the termination of claimant's employment as a mucker, that claimant was then incapacitated from performing normal labor as a mucker in a mica mine, and that it was impossible to state how long claimant had been so disabled prior to the examination. There was no testimony that claimant was physically incapable of performing regularly the duties incident to his several employments since he left the mica mine. *Held:* There is no sufficient evidence to support a finding that claimant was disabled from silicosis occurring within two years from claimant's last exposure to silica dust.

**4. Same—**

"Disablement" from silicosis and asbestosis is defined in unambiguous terms by G.S. 97-54, and under the statute "the last occupation in which remuneratively employed" is not synonymous with the "place of last injurious exposure" nor does "disablement" mean disability to perform the duties of employment at the place of last exposure.

**5. Same—**

An employee is actually disabled by reason of silicosis when by reason of this disease he is incapable of continuing to perform the normal labor incident to the employment in which he is then engaged with substantial regularity. This definition does not include odd jobs of a trifling nature which the employee may be driven to perform irregularly as a result of economic necessity.

APPEAL by defendants from *Nettles, J.,* March-April Term 1954, MITCHELL.

Proceedings under the Workmen's Compensation Act to recover compensation for disablement resulting from silicosis, an occupational disease.

Plaintiff began work as a mucker in a mica mine as an employee of Tennessee Mineral Company, predecessor of defendant United Feldspar Corporation. For convenience the defendant United Feldspar Corporation will hereafter be referred to as Feldspar or defendant. As the insurance carrier is made party defendant to the end it may be bound by any award made to plaintiff and for no other purpose, no reference will hereafter be made to it.

Except for approximately thirteen months, plaintiff continued to work for Tennessee Mineral Company and its successor, Feldspar, until 1946. In his work he was exposed to silica dust. While he was accepted for military service and served from 28 June 1945 to 17 November 1945, his commanding officer exempted him from the heavy basic training duties for the reason he was short-winded. He was discharged from military service on dependency grounds and returned to his job as a mucker 16 December 1945.

On 2 May 1946 he left the employment of Feldspar. At the time he left Feldspar he had already procured employment by Phillips & Coulter Oil Co. as a driver of an oil truck. This employment entailed less physical exertion and paid a higher wage.

In 1949 he procured employment in West Virginia with a road contractor as an oiler on a Diesel-propelled road construction shovel where he remained for about nine months. He left that job and returned to Phillips & Coulter. In July or August 1952 he procured employment with L. M. Carpenter and Associates where his duties involved the packing of sheeted mica in boxes. He was thus employed at the time of the hearing in this cause. From 1946 to 1952 he also held other jobs for short periods of time.

In all the jobs above listed which plaintiff has had since leaving the mine of Feldspar, he has earned more than he earned while working for Feldspar, and at the time he was advised that he had silicosis he was earning more than twice as much as he earned as a mucker in Feldspar's mica mine.

While employed as a mucker where he was exposed to silica dust, he was examined 14 October 1936, 22 May 1940, 27 August 1941, and 27 April 1943, with only negative findings. On 11 February 1952 he had X-rays of his chest. These were examined by Dr. C. D. Thomas. Basing his opinion on this examination, Dr. Thomas testified that as of 11 February 1952 plaintiff had silicosis grade 2, and that in his opinion claimant "is now actually incapacitated by reason of silicosis from performing normal labor as a mucker in a feldspar mine. It is my opinion that his disability occurred prior to February 11, 1952. It is my opinion that it would be impossible to state how long before February 11, 1952, that he became disabled . . . If plaintiff in this case held down a job on a contracting, road-building job as oiler on a shovel for some eight or nine months continually in 1949, it would be my opinion that he was not disabled back at that time."

Shortly after the X-rays of 11 February 1952, Dr. Thomas advised plaintiff that he had silicosis. This was the first time he was ever advised by competent medical authority that he was suffering from silicosis.

On 23 October 1952 the Industrial Hygiene Section of the Commission re-examined and X-rayed claimant and made a diagnosis of "probable Silicosis in the second stage."

Dr. G. W. Murphy of Asheville made an X-ray examination of plaintiff on 28 November 1952 and concluded (as revealed through plaintiff's case history furnished by Dr. Swisher) that "This is the classical x-ray picture of a late second or early third degree silicosis . . . I believe that the diagnosis of silicosis may be accepted as final." Dr. E. W. Schoenheit of Asheville, after examining plaintiff, stated that "it seems quite definite the patient has silicosis."

Plaintiff testified that he left the employment of Feldspar in 1946 because he was not able to work, that the work of a mucker in a feldspar mine is hard work and he did not have the strength to do what he was supposed to do, that he has had some trouble with shortness of breath and with coughing, that he has noticed a change in his physical condition since 1946, and that he has noticed it all along, and he is not now physically able to do the work that he did while employed by Feldspar.

In all the jobs which plaintiff has had since leaving Feldspar in 1946, he has earned more money than he earned while working for said defendant.

The work of a mucker requires the use of a sledge hammer and involves heavy manual labor.

In 1952 he was advised by a competent medical authority that he was suffering from silicosis. The Commission found as a fact that defendant, in performing the duties of the various jobs held by him after 1946, worked with substantial regularity and made more money up to the very day of the hearing; that at the time he was advised he had silicosis, he was earning more than twice as much as he earned as a mucker. It further found that claimant is disabled.

Upon the facts found by it, the Commission concluded as a matter of law that the claimant is actually incapacitated by reason of silicosis from performing normal labor as a mucker (which was the last occupation in which he was remuneratively employed while exposed to the hazard of silica), that this incapacity occurred on 2 May 1946, which was within two years of the claimant's last injurious exposure, and that the claimant is entitled to ordinary compensation under the provisions of G.S. 97-29 during not more than 400 weeks beginning 2 May 1946. It made an award in accord with its findings, and defendants excepted and appealed to the Superior Court.

When the appeal came on for hearing in the court below, the court overruled all exceptions to the findings of fact and conclusions of law made by the Commission and affirmed the award in its entirety. Defendants excepted and appealed to this Court.

*Charles Hughes for plaintiff appellee.*
*Williams & Williams for defendant appellants.*

BARNHILL, C. J. The plaintiff has failed to establish a compensable claim for disablement due to silicosis which arose within two years after his last injurious exposure to the hazards of free silica dust.

The Commission found as a fact that claimant is actually incapacitated by silicosis, and that his disablement occurred on 2 May 1946, the day he left the employment of Feldspar to accept a job with Phillips & Coul-

ter. There is no sufficient evidence in the record to support this finding or a finding that he suffered disablement from silicosis at any time prior to 2 May 1948, the end of the two-year period next after his last injurious exposure. G.S. 97-58.

There is no evidence in the record that plaintiff lost any time from his work due to silicosis. Although he testified that he left the employment of Feldspar in 1946 because he was not able to work, that the work of a mucker is hard work, and he did not have the strength to do what he was supposed to do, that he was short of breath and had a cough; he also testified that he had only lost about a week on several occasions on account of influenza, and that while he consulted his physician occasionally, he at no time during that period considered his cough, shortness of breath, or lung condition sufficiently serious to mention it to his physician.

There is no evidence in the record that his loss of time or his condition was due to silicosis. In 1952 he passed a Board of Health X-ray motor truck and decided he would stop and have his chest X-rayed. It was thus that he learned, more or less by accident, that he was suffering from silicosis.

Due to the peculiar nature of the disease, the slow process of its development, the similarity of its symptoms to those of other diseases which affect the lungs, and for other reasons, a workman, whatever his actual physical condition may be, is not charged with notice that he has silicosis until and unless he is so advised by competent medical authority, and the time within which he must file his claim for compensation begins to run from the date he is so advised. G.S. 97-58 (b).

For the same reasons and in view of the requirements of the statute, we have held that evidence tending to establish "disablement," as that term is used in the statute in reference to silicosis, must be supported by medical testimony and *"that the finding of the competent medical authority must be to the effect that disablement occurred within two years from the last exposure . . ."* (Italics supplied.) *Duncan v. Carpenter,* 233 N.C. 422, 64 S.E. 2d 410; *Singleton v. Mica Co.,* 235 N.C. 315, 69 S.E. 2d 707. This record is devoid of such evidence.

It follows that the plaintiff has failed to offer evidence sufficient to support his claim.

In so holding we are advertent to the fact that Dr. Thomas testified that in his opinion plaintiff was then (at the time of the hearing) actually incapacitated from performing normal labor as a mucker in a mica mine, and that such disability occurred sometime prior to 11 February 1952. He testified further that: "It is my opinion that it would be impossible to state how long before February 11, 1952, that he became disabled . . . All I can say is that it happened sometime during that time and I cannot fix a time." He did not testify, however, that plaintiff is even now physi-

cally incapable of performing regularly the duties incident to the several employments he has had since he left Feldspar.

We are likewise advertent to the finding of the Commission "That the claimant is actually incapacitated by reason of silicosis from performing normal labor as a mucker in a feldspar mine, the last job in which he was remuneratively employed while exposed to the hazards of inhaling dust containing silica or silicates." In this connection it also found that plaintiff worked regularly at the various jobs he held after leaving Feldspar, and for more pay—55c per hour with Feldspar, and $1.50 per hour with L. M. Carpenter and Associates, by whom he was employed at the time of the hearing.

The inability of plaintiff to perform normal labor as a mucker in a feldspar mine is not the test. Nor is the place of last exposure necessarily the last place he was remuneratively employed.

The difference in the statutory rule to be followed in ascertaining the amount of recovery in case of an industrial accident, on the one hand, and silicosis, asbestosis, or lead poisoning, on the other, has been fully discussed in former decisions of this Court. *Honeycutt v. Asbestos Co.,* 235 N.C. 471, 70 S.E. 2d 426; *Duncan v. Carpenter, supra; Singleton v. Mica Co., supra; Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797. Those opinions are written in clear and understandable language. No further clarification should be necessary. In view of our conclusion that plaintiff has failed to establish disablement occurring within two years next after his last injurious exposure to free silica dust, we would not so much as mention this phase of the case except for the fact it is apparent the Commission has misconstrued our decision in the *Honeycutt case.*

Suffice it to say that the statutory definition of disablement as used in respect to silicosis, G.S. 97-54, is clear and unambiguous. There is no need for construction. The interpolation of other words, as the Commission has done, to discover its meaning is wholly unnecessary. There is not the faintest suggestion in the statute that the Legislature intended to make "the last occupation in which remuneratively employed" and "the place of last injurious exposure" synonymous terms, or that "disablement," as that term is used in respect to silicosis and asbestosis, means disability to perform the duties of his employment at the place of his last exposure.

Had the Legislature intended to tie the measure of compensation to the wage the claimant was earning at the time of his last exposure and to make disablement mean "the event of becoming actually incapacitated because of silicosis from performing the duties of his employment at the place of his last injurious exposure," it could have so provided by simply using that language in lieu of "the last occupation in which remuneratively employed." If we had intended to so construe the statutory defi-

nition of "disablement," *Denny, J.,* author of the opinion in the *Honey-cutt case,* would have so stated in plain and explicit language that could not be misconstrued by Bench or Bar.

In the *Honeycutt case* the defendants conceded there was evidence to support the finding of disability within the meaning of G.S. 97-54. The contest there involved the measure of his recovery, and we held that "the last occupation in which remuneratively employed" has no reference to odd jobs a self-respecting employee, driven by stark economic necessity, will accept and attempt to perform so as to eke out a living for himself and his family rather than to become the recipient of charity or government aid.

We gave the term the liberal, practical and realistic construction required by the statute and to which an employee is entitled by concluding the language means just what it says. An employee is actually disabled by reason of silicosis when his condition has reached the stage that he is incapable of continuing to perform the normal labor incident to the employment in which he is then engaged, with substantial regularity, and which he would be able to perform were it not for his silicotic condition. This is the last job in which he was remuneratively employed within the meaning of the statute.

In that particular case, under the construction adopted by us, the wage he was earning at the place of last injurious exposure was the criterion. We adopted that wage as the measure of the plaintiff's recovery, not because it was the wage earned at the job of last injurious exposure, but for the reason it was earned in the last occupation in which the plaintiff was remuneratively employed. When this is understood, there should be no misconception of the opinion in that case.

The court below will remand this cause to the Industrial Commission with direction that it proceed in accord with this opinion. To that end the judgment entered in the court below is

Reversed.