CLARENCE H. BRINKLEY v. UNITED FELDSPAR & MINERALS CORPO-RATION, AND COAL OPERATORS CASUALTY COMPANY.

(Filed 10 April, 1957.)

**1. Master and Servant § 55i—**

Findings of fact and conclusions of law in respect to claimant's disability embodied in an award upheld by the full Commission and affirmed in the Superior Court, and from which no appeal is perfected, are determinative of claimant's status with respect to disablement on that date.

**2. Master and Servant § 40f—**

The Compensation Act contemplates that an employee will not be allowed to remain exposed to silica dust or asbestos dust until he becomes actually incapacitated within the meaning of G.S. 97-54, and that if removed from the hazard before such incapacity, he will seek and obtain other remunerative employment. G.S. 97-61.

**3. Same—**

Incapacity from silicosis within the meaning of the statute is incapacity to perform the normal labor of the last occupation in which remuneratively employed, which may be wholly separate from the one in which the employee was exposed to the hazards of silicosis. G.S. 97-54.

**4. Same—**

Where an employee is removed from the hazard of silicosis before becoming actually incapacitated within the meaning of G.S. 97-54, and thereafter obtains other remunerative employment, but becomes actually incapacitated from performing normal labor in such other occupation within two years of the time of his last exposure to the hazard of silicosis, he is entitled to compensation for such incapacity to perform the normal labor of the last occupation in which remuneratively employed.

**5. Same—**

Claimant was removed from the hazard of silica dust before becoming incapacitated within the meaning of G.S. 97-54. He was thereafter employed by the same employer for five years at the same wage at employment free from the hazard of silica dust. *Held:* His retirement from such other occupation at the end of five years could not have been caused by incapacity from silicosis resulting within two years of the last exposure to silica dust, and compensation therefor cannot be sustained. G.S. 97-58.

**6. Same—**

The evidence in this case *is held* to show that the employment of claimant after he had been removed from the hazards of silica dust was not merely employment at odd jobs of a trifling nature but was a continuous *bona fide* employment of a responsible nature for a period of five years.

APPEAL by defendants from *Pless, J.,* September Term 1956 of MITCHELL.

This is a proceeding for compensation under the provisions of the North Carolina Workmen's Compensation Act for disability due to silicosis.

The original hearing in this cause was before Chairman Huskins at Spruce Pine on 28 May 1951.

Upon the stipulations entered into by counsel and the evidence offered, Chairman Huskins found the following facts: "(1) That the parties are subject to and bound by the provisions of the Compensation Act . . . (2) That Coal Operators Casualty Company is the compensation carrier and was on the risk at the times complained of. (3) That plaintiff's average weekly wage was $68.50. (4) That plaintiff has been exposed to silica dust in North Carolina for two years in the last ten years and has been exposed to silica dust as much as thirty working days, or parts thereof, within seven consecutive calendar months while in the employment of the defendant employer; that such exposure has been of such nature and extent as to constitute an injurious exposure within the meaning of G.S. 97-54. (5) That defendant's employees have been periodically examined and the employer has been notified and knows that his business is subject to the hazards of silicosis. (6) That plaintiff is now suffering from silicosis in its second stage. (7) That plaintiff was first advised by competent medical authority that he had silicosis when he received a letter from Dr. Swisher dated 3 October 1950 so informing him. (8) That plaintiff filed his claim for compensation with the Industrial Commission on 30 October 1950. (9) That on 30 November 1950 plaintiff signed a statement to the effect that he was at that date able to do his work and that he expected to continue to do it; that as of the date of the hearing in this case on 28 May 1951 plaintiff was still working regularly, performing the

normal labors of his job, and had not missed a day within the preceding twelve months; that plaintiff weighs 166 pounds, which is only three or four pounds below his normal weight; that he has a fair appetite and sleeps as well as usual; that his appearance is good; that he has some stiffness of his joints and for the last year his breath has been a little shorter; that plaintiff is not now actually incapacitated because of silicosis from performing normal labor in the last occupation in which remuneratively employed, that is, as mill superintendent and machinery repairman; that plaintiff still possesses the capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation free from the hazards of silicosis; that plaintiff is therefore a fit subject for rehabilitation under the provisions of G.S. 97-61 and would be benefited by being removed from employment where the hazards of silicosis exist; that his silicotic condition has progressed to such a degree as to make it hazardous for him to continue in an employment which subjects him to silica dust; that plaintiff has the ability and the capacity to re-adjust himself in some new occupation and does not need, and would not be benefited by, the special training provided for in G.S. 97-61."

Upon the foregoing findings of fact, Chairman Huskins drew these pertinent conclusions of law: (1) That the plaintiff in this case is not disabled within the meaning of G.S. 97-54; (2) that the plaintiff possesses the actual or potential capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation free from the hazards of silicosis and that he is not entitled to compensation for disability under G.S. 97-29; (3) that the plaintiff should be rehabilitated under the provisions of G.S. 97-61, and under that section he is entitled to compensation for a period not exceeding 40 weeks (the plaintiff having dependents), beginning as of 1 August 1951. Such compensation will be calculated at a rate equal to 60 per cent of the difference between plaintiff's average weekly wage of $68.50 while injuriously exposed and the average weekly wage he is able to earn during the rehabilitation period. (4) Should the plaintiff actually become disabled as that term is defined by G.S. 97-54 within two years from his last injurious exposure to silica dust, and should his capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation, free from the hazards of silicosis, deteriorate to such extent that there is no longer a reasonable basis for the conclusion that he possesses such capacity, then and in that event, he would be entitled, upon application in apt time, to ordinary compensation provided by G.S. 97-29, unhampered by the limitations contained in G.S. 97-61.

An award was made in accord with these conclusions of law, including an order for the plaintiff's removal from all employment wherein

the hazards of silicosis are present. (The record discloses that the plaintiff has not been exposed to silica dust since 5 October 1950.)

The plaintiff appealed to the Full Commission. The Commission reviewed the evidence, findings of fact, conclusions of law and the award theretofore made and adopted as its own the findings of fact and conclusions of law of the hearing Commissioner and affirmed the award.

An appeal was taken to the Superior Court where the matter was heard on 4 April 1952. The court found as a fact that there was competent evidence in the record to support the findings of fact and conclusions of law of the Industrial Commission. Whereupon, an order was entered affirming in all respects the award entered by the Commission on 29 November 1951.

The plaintiff in apt time gave notice of appeal to the Supreme Court.

On 15 May 1953, the plaintiff filed a petition with the Industrial Commission requesting an increased award upon the ground that his condition had gradually become worse and that he was totally and permanently disabled from silicosis as defined by G.S. 97-54.

Thereafter, the plaintiff filed a motion in the Superior Court of Mitchell County requesting the court to dismiss his appeal to the Supreme Court and to remand the cause to the Industrial Commission for such action as may be proper. The motion was granted on 2 December 1953.

The Commission remanded the cause on 29 April 1954 to a hearing Commissioner for the purpose of determining (a) whether or not the plaintiff had become totally disabled within the meaning of G.S. 97-54, (b) whether or not such total disability occurred within two years of plaintiff's last injurious exposure to silicotic hazard, and (c) any and all other issues which might properly be raised by the parties.

Pursuant to the foregoing order, Deputy Commissioner Currin conducted a hearing in this cause on 5 May 1954.

The evidence discloses that following the hearing originally conducted by Chairman Huskins, as hearing Commissioner, on 28 May 1951, the plaintiff continued his employment and stayed in the office or in and around the supply house at the defendant's plant at Minpro. The plant at Minpro was burned in July or August 1951. The plaintiff was then sent to Glendon in Moore County where a plant had burned and was to be rebuilt, and the plaintiff was to supervise the rebuilding of the plant, clean it up and get it started. The plaintiff testified, "The type of work I did at Glendon was constructing a new plant to grind pyrophyllite. I didn't do any manual labor. At Glendon I was still employed by United Feldspar and Minerals Corporation. I tried to be a layout man. Of course, it was all on me to buy or do whatever I saw fit. . . . After I left Glendon and came back to Spruce Pine in March 1952, I rode a chair down here and tried to sell what equipment I could

and look after the Company's property. . . . The junk that was left down there after the fire was what I . . . was trying to sell. . . . I stayed up here (Spruce Pine) about a year. . . . After I went to Greensboro in March 1953 they used me as an expediter on a new job. I was to find whatever the contractor needed. I was to dig it up for him. The hardest work I did was driving a car. I stayed at that plant until September 1953 when I came home. I have been in Spruce Pine since September 1953. I have been down here at the old plant . . . looking after the property and still selling off equipment and stuff like that. . . . During the period of two years following May 28, 1951, . . . I have not done any strenuous work or any work that required physical exertion. . . . Since May 1951 I have gotten a pay check every payday from that Company. I have made the same thing that I was making in May 1951; no raise whatever. Well, as far as work is concerned, I ain't missed a day since May 1951, no, I haven't been in the hospital or anything that I can think of right off. That's right, I haven't missed a day from doing what I got paid for doing. . . . My weight stays about the same. . . . I don't have any particular trouble about sleeping at night . . . About the only difference I notice now in contrast to my former condition is that my breath is shorter and that I don't have the same strength that I had previously. As far as silicosis is concerned, I have never had a pain . . . I have had no exposure to silica dust since October 1950."

The medical testimony reveals that the plaintiff had silicosis in the second stage on 10 July 1950; that he was again examined on 12 June 1951 and 7 July 1952. Both of these examinations revealed a diagnosis of silicosis in the second stage. On 16 September, 1952, Dr. Otto J. Swisher, Jr., Chief of the Industrial Hygiene Section of the North Carolina State Board of Health, wrote the plaintiff as follows: "The Advisory Medical Committee for the North Carolina Industrial Commission recently met and reviewed the x-ray film of your chest which was made by our Mobile Unit on July 7, 1952, the Committee concurred on your diagnosis as still that of silicosis in the second stage, revealing no progression over your previous film of June 12, 1951, due to these findings we are unable to issue you the usual work card and it is recommended that you have no further exposure to dusty trades."

Dr. Swisher testified that he examined the plaintiff on 26 May 1953, and "at that time interim history since last exposure, he stated that he had had a cough only with a cold, further states he has been short of breath for the past 12 or 13 years. Noticeably all the time while walking or going up stairs, this has been progressing for the past two or three years, strength and energy fair, weight has been stationary, physical examination, general appearance good, weight 167, blood pressure normal, 110/70, skin and mucous membrane negative, pulse regu-

lar, 72, heart normal, chest medium type with expansion of two inches, extremities reveal cyanotic nails and lips, also bowed nails, x-ray interpretation Film 39971, diagnosis by Dr. H. F. Eason is still that of silicosis the second stage, revealing no change over the previous film."

Counsel asked Dr. Swisher this question: If the Commission should find from the evidence that Mr. Brinkley's last employment while exposed to the hazards of silicosis was that of a mill superintendent, that is a superintendent of a feldspar grinding plant, that these duties require that he go over a building which had five or six levels, and which was more than 70 feet high, did he have an opinion as to whether or not the plaintiff was actually incapacitated because of silicosis from performing his duties as such superintendent? Dr. Swisher testified, "I have an opinion satisfactory to myself as to whether or not on September 16, 1952, Mr. Brinkley was actually incapacitated because of silicosis from performing normal labor in this employment which you have outlined to me. My opinion is that he is disabled. That he was so disabled on September 16, 1952."

The crucial finding of fact by the hearing Commissioner was as follows: "11. That sometime prior to 16 September 1952 the claimant became actually incapacitated by reason of silicosis from performing normal labor as plant superintendent, the last occupation in which he was remuneratively employed while exposed to the hazard of silicosis, and that this incapacity occurred within two years of his said last injurious exposure."

The hearing Commissioner concluded as a matter of law that plaintiff was disabled within the meaning of G.S. 97-54 and that his disability occurred within two years from 5 October 1950. Award was made for ordinary compensation under the provisions of G.S. 97-29 for not more than 400 weeks beginning 1 October 1952.

The defendants appealed to the Full Commission. The case was argued before the Commission and remanded on 31 May 1955 for a further hearing. Certain additional evidence was taken on 10 May 1956 and filed with the Commission on 21 May 1956, without any facts being found or any conclusions of law having been drawn thereon by the hearing Commissioner. Whereupon, the Commission adopted as its own the findings of fact, conclusions of law and the award of Deputy Commissioner Currin.

An appeal was taken in apt time to the Superior Court where the defendants' exceptions were overruled and the opinion of the Commission affirmed. Defendants appeal, assigning error.

*Fouts & Watson for appellee.*
*Proctor & Dameron for appellants.*

DENNY, J.  Before considering the principal question involved in this appeal, we shall dispose of certain preliminary questions that appear on the face of the record.

In the first place, since the findings of fact and conclusions of law, based on the evidence adduced in the original hearing on 28 May 1951, were upheld by the Full Commission and affirmed in the Superior Court, and from which ruling in the Superior Court no appeal was taken and perfected, such findings of fact and conclusions of law will be considered as determinative of the plaintiff's status with respect to disablement on that date.

It follows, therefore, (1) that on 28 May 1951 the plaintiff was not disabled within the meaning of G.S. 97-54, (2) that he was not at that time actually incapacitated because of silicosis from performing normal labor in the last occupation in which remuneratively employed *as a mill superintendent and machinery repairman,* and (3) that the plaintiff possessed the capacity of body and mind to work with substantial regularity during the foreseeable future in some gainful occupation free from the hazards of silicosis.

In view of the facts found by Chairman Huskins, as the hearing Commissioner, and the conclusions of law drawn by him, which were upheld as hereinabove pointed out, the plaintiff is not entitled to receive any compensation pursuant to the provisions of G.S. 97-29, unless he has shown that he became actually incapacitated because of silicosis between 28 May 1951 and 5 October 1952 from performing normal labor in the last occupation in which remuneratively employed between the above dates.  G.S. 97-54; *Huskins v. Feldspar Corp.,* 241 N.C. 128, 84 S.E. 2d 645; *Duncan v. Carpenter,* 233 N.C. 422, 64 S.E. 2d 410.

It appears from the record that this case was tried upon the theory that the criterion for determining when one afflicted with silicosis is actually incapacitated depends upon whether or not he is actually incapacitated from performing normal labor in the last occupation in which remuneratively employed while exposed to the hazards of silicosis, and whether or not such incapacity occurred within two years of such last injurious exposure.  This may be the correct theory in a case where the employee is so incapacitated when removed from the hazards of silicosis that he never had any remunerative employment during the next two years, as was the case in *Singleton v. Mica Co.,* 235 N.C. 315, 69 S.E. 2d 707.  However, the provisions of our compensation law with respect to silicosis and asbestosis contemplate that the State medical authorities, whose duty it is to examine employees in dusty trades, will not permit an employee to remain exposed to silica dust or asbestos dust until he becomes actually incapacitated within the meaning of G.S. 97-54.  G.S. 97-61.

It must be kept in mind that a claim based on disability resulting from an ordinary industrial accident as defined in G.S. 97-2(i) means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." But where an employee is removed from silica dust, unless actually incapacitated at that time, it is contemplated that he will seek and obtain other remunerative employment. G.S. 97-61. Even so, if within two years from the time of his last exposure to silica dust he becomes actually incapacitated to perform normal labor in his last occupation in which remuneratively employed, he will be entitled to receive ordinary compensation under the general provisions of our Workmen's Compensation Act. G.S. 97-29; G.S. 97-64; *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E. 2d 797.

On the other hand, "disability" resulting from asbestosis or silicosis means the event of becoming actually incapacitated from performing normal labor in the last occupation in which remuneratively employed. G.S. 97-54. The last occupation in which remuneratively employed may be one wholly separate and apart from the employment in which the employee was last exposed to the hazards of silicosis. *Huskins v. Feldspar Corp., supra.*

The reason for allowing two years from the date of the last exposure to silica dust in which to determine actual disability from silicosis is due to the fact "that silicosis is a progressive disease, the lung changes continuing to develop for one or two years after removal of the worker from the silica hazard. Reed and Harcourt: The Essentials of Occupational Diseases, pages 161-174; Reed and Emerson: The Relation Between Injury and Disease, pages 182-186; Goldstein and Shabat: Medical Trial Technique, pages 773-776; Gray: Attorneys' Textbook of Medicine (2d Ed.), pages 1060-1070." *Young v. Whitehall Co., supra.*

We note that the first hearing in this case was held before the decision was handed down in *Honeycutt v. Asbestos Co.*, 235 N.C. 471, 70 S.E. 2d 426, and that the second hearing was held thereafter but before the decision in *Huskins v. Feldspar Corp., supra.* The decision in the *Honeycutt case*, as pointed out by *Barnhill, C. J.*, in the *Huskins case*, seems to have been misconstrued.

A careful review of the original record in the *Honeycutt case* reveals that Honeycutt was last exposed to asbestos dust on 27 July 1950. He was notified by competent medical authority that he had asbestosis on 5 August 1950. He filed claim for compensation on 15 November 1950. Claim for compensation was heard on 4 April 1951 and it was found as a fact, supported by competent evidence, that claimant was actually incapacitated on 27 July 1950; that he was not physically able to continue to perform his duties as a policeman without physical detri-

ment to himself, and that there was no reasonable basis upon which to conclude that he possessed the actual or potential capacity of body or mind to work with substantial regularity during the foreseeable future in any gainful employment free from the hazards of asbestosis without injury and detriment to his physical condition. This was certainly tantamount to a finding that he was actually incapacitated because of asbestosis from performing normal labor in the last occupation in which he was remuneratively employed, to wit, that of policeman of the Town of Davidson.

On the present record, there is no finding to the effect that the plaintiff became actually incapacitated by reason of silicosis from performing normal labor in the last occupation in which he was remuneratively employed prior to 5 October 1952. Moreover, if such a finding had been made, there is no evidence to support it.

The defendants except to and assign as error the finding to the effect "that some time prior to 16 September 1952, the claimant became actually incapacitated by reason of silicosis from performing normal labor as plant superintendent, the last occupation in which he was remuneratively employed, while exposed to the hazards of silicosis." It is clear that this finding is bottomed on a misconception of the law as to what is meant by the last occupation in which remuneratively employed. Under the facts in this case, the plaintiff was continuously employed in a gainful occupation free from the hazard of silica dust from 5 October 1950 until his retirement on 7 December 1955, which constituted the last occupation in which he was remuneratively employed. Neither was there a finding below to the effect that there is no reasonable basis upon which to conclude that the plaintiff possessed the actual or potential capacity of body or mind to work with substantial regularity during the foreseeable future in any gainful occupation free from the hazards of silicosis without injurious detriment to his physical condition. On the contrary, the medical testimony in this case reveals that from 10 July 1950 until the final examination made on 23 May 1953, which was more than two years after plaintiff's last exposure to silica dust, the x-rays revealed no change from previous films.

The appellee seriously contends that he was not really a *bona fide* employee of the defendant employer between 5 October 1950 and the date of his retirement on 7 December 1955, under the company's retirement system or pension plan. We do not concur in this view. After the hearing on 28 May 1951, the plaintiff continued in the employment of the defendant employer, staying in the office or in and around the supply house, at the plant at Minpro, attending to such duties as were assigned to him. When the plant at Minpro burned in July or August 1951, the plaintiff was sent to Glendon in Moore County to rebuild a

plant that had burned. According to his testimony, he was charged with the responsibility of supervising the rebuilding of a plant to grind pyrophyllite, of buying material, laying out the work, installing the machinery, cleaning it up and getting the plant started. He worked continuously on this job until March 1952. Thereafter, until March 1953, he was engaged in looking after his employer's property at Minpro and trying to dispose of certain equipment and material which his employer wanted him to sell. Furthermore, the plaintiff testified at the hearing on 5 May 1954 that he had not missed a day from his work since May 1951, "I have not missed a day from doing what I got paid for doing."

We appreciate the seriousness of silicosis. It is incurable. However, our compensation law provides only for compensation from silicosis where it is established that actual incapacity occurs within the meaning of G.S. 97-54 and within two years from the last exposure to silica dust. G.S. 97-58. The plaintiff has failed to establish these prerequisites to a recovery. *Huskins v. Feldspar Corp., supra.*

The judgment of the court below is

Reversed.