Martin v. Petroleum Tank Service

———————

LARRY JOE MARTIN, EMPLOYEE-PLAINTIFF v. PETROLEUM TANK SERVICE, EMPLOYER, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER-DEFEND-ANT

No. 8310IC429

(Filed 20 December 1983)

1. **Master and Servant § 68.1— time for filing claim for silicosis—two-prong test**

    A two-prong test applies to trigger the running of the two-year period within which a claim for silicosis must be filed: (1) the time at which the employee is disabled within the meaning of G.S. 97-54 by his inability to work and (2) the time at which the employee is informed of his disease by competent medical authority.

2. **Master and Servant § 68.1— claim for silicosis—filing in apt time**

    Although plaintiff learned from a competent medical authority in early 1978 that he had the occupational disease silicosis, his claim for silicosis filed 15 October 1981 was filed within the two-year period set forth in G.S. 97-58(c) where he continued working in other full-time jobs at comparable wages after he left employment by defendant as a sandblaster in 1978 until he was forced to discontinue working as a painter in August 1981 because of his silicosis.

3. **Master and Servant § 68.1— disablement from silicosis**

    Even if disablement from silicosis is measured from the time a claimant can no longer work at "dusty trades" rather than at any job, the evidence was sufficient to support a finding by the Industrial Commission that claimant was disabled in 1981 when he was forced to discontinue working rather than when he learned that he had silicosis in 1978 where it tended to show that claimant's doctor recommended in 1978 that claimant no longer work as a sandblaster, but there was no showing that claimant was "unable" to earn comparable wages in a dusty trade had he chosen to do so. G.S. 97-54.

APPEAL by defendants from the North Carolina Industrial Commission. The opinion and award was entered 18 November 1982. Heard in the Court of Appeals 9 December 1983.

Following a hearing on 26 May 1982, Deputy Commissioner Lisa Shepherd determined that plaintiff was seventy percent disabled from silicosis and awarded him 104 weeks of disability payments. Defendant-employer and defendant-insurance carrier appealed to the Full Commission, which adopted and affirmed Deputy Commissioner Shepherd's opinion and award. The facts found by Deputy Commissioner Shepherd and adopted by the Full Commission reveal the following events.

Plaintiff dropped out of high school at age fifteen in 1968, and went to work for defendant-employer as a sandblaster. Plaintiff worked for defendant-employer off and on over the next ten years. During this time, plaintiff began to experience breathing problems, and was hospitalized several times. In early 1978 a doctor diagnosed plaintiff's illness as silicosis and plaintiff left his job with defendant-employer.

From early 1978 until August 1981, plaintiff worked full time at other jobs, including cleaning cars and painting, earning wages comparable to those he received from defendant-employer. In mid-August 1981, however, plaintiff became disabled due to silicosis and was forced to discontinue working. He filed a claim for disability benefits with the Industrial Commission on 15 October 1981. Defendants do not contend that plaintiff's silicosis is due to some cause other than his employment as a sandblaster for defendant-employer.

*Swofford, Poliakoff and Spears, by Gary W. Poliakoff and Christ Christ, for plaintiff.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by Scott M. Stevenson, for defendants.*

WELLS, Judge.

In their first assignment of error, defendants assert that the Full Commission erred in failing to find that plaintiff's claims are barred by G.S. § 97-58(a) and (c). Under G.S. § 97-58(c) "[t]he right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement . . . ." Defendants contend that plaintiff did not file his claim within two years of his disablement and that the Industrial Commission therefore was without jurisdiction to hear his suit. *See Poythress v. J. P. Stevens Co.*, 54 N.C. App. 376, 283 S.E. 2d 573 (1981), *disc. rev. denied*, 305 N.C. 153, 289 S.E. 2d 380 (1982).

We turn, therefore, to a consideration of the question of when disablement occurs within the meaning of the two year claim requirement for silicosis cases. Disablement in asbestosis and silicosis cases is defined as ". . . the event of becoming actually incapacitated because of asbestosis or silicosis to earn, in the same or any other employment, the wages which the employee was receiving at the time of his last injurious exposure to asbestosis or silicosis. . . ." G.S. § 97-54.

The statutory definition of disablement was further refined by our Supreme Court in *Duncan v. Carpenter*, 233 N.C. 422, 64 S.E. 2d 410 (1951). In *Duncan*, the plaintiff began working in trades exposing him to silica dust in 1912. Plaintiff developed a persistent cough, sore lungs and shortness of breath by 1946, but was not notified by competent medical authority that he had silicosis until November 1948. Plaintiff quit his job in a mineral plant on 23 April 1948, and filed a claim for compensation with the Industrial Commission on 25 April 1949. Under the Workers' Compensation statutes as they appeared at the time, "[t]he term 'disablement' . . . as applied to cases of asbestosis and silicosis means the event of becoming actually incapacitated, because of such occupational disease, from performing normal labor in the last occupation in which remuneratively employed . . . ." G.S.

§ 97-54. Under G.S. § 97-58(c) a claimant had to file his or her claim within one year (now two years) of disability or disablement.

The issue in *Duncan*, therefore, was how to determine the point at which claimant became disabled within the meaning of G.S. § 97-54 and § 97-58(c). Clearly, if inability to work was the criterion triggering the one year claim period, plaintiff would be barred, since he filed a year and two days after discontinuing work. The court, however, held that ". . . disablement, for the purpose of notice and claim for compensation, should date from the time the employee was notified by competent medical authority that he had such disease." The rationale behind *Duncan* was clearly the court's reluctance to permit a claimant's right to benefits to expire before the claimant was even aware that he suffered from a compensable disease.

[1] *Duncan*, therefore, provides a two-prong test to trigger the running of the claim period: (1) the time at which employee is disabled within the meaning of G.S. § 97-54 by his inability to work *and* (2) the time at which employee is informed of his disease by competent medical authority. *Duncan* dealt expressly only with the situation in which a claimant becomes unable to work *before* his disease is diagnosed, holding that the claim period is triggered when the claimant is notified by competent medical authorities of his illness, and there is nothing in *Duncan* to indicate that diagnosis is the *sole* triggering event, it being implicit in the holding that disability was also crucial. Cases decided after *Duncan* discuss both disability and diagnosis. *See, e.g., Huskins v. Feldspar Corp.*, 241 N.C. 128, 84 S.E. 2d 645 (1954), *Brinkley v. United Feldspar & Minerals Corp.*, 246 N.C. 17, 97 S.E. 2d 419 (1957).

[2] While claimant in our case learned of his disease *before* he was disabled within the meaning of G.S. § 97-54, there appears no reason to apply a rule other than the two-prong test of *Duncan. Compare also Dowdy v. Fieldcrest Mills*, 308 N.C. 701, 304 S.E. 2d 215 (1983) requiring a similar two-pronged test in byssinosis cases, and overruling by implication language holding simply that the two-year claims period begins running when claimant is notified of the nature of his disease. *See, e.g., Clary v. A.M. Smyre Mfg. Co.*, 61 N.C. App. 254, 300 S.E. 2d 704 (1983) and cases cited therein.

Defendants point to language in *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980), which they argue changes the definition of disablement in silicosis and asbestosis cases. The *Taylor* court noted that ". . . disablement from silicosis and asbestosis is measured from the time a claimant can no longer work at dusty trades, not from the time he can no longer work at *any* job. G.S. § 97-54." (Emphasis in original.)

While the quoted language appears to support defendant's position, we hold that it is not dispositive of the issues in this case. First, *Taylor* involved a claim for byssinosis, and thus the court's remarks concerning silicosis were mere dicta. Second, G.S. § 97-54, which is the only authority cited to bolster the *Taylor* court's "dusty trades" language, does not in fact support this requirement. The statute clearly states that disablement begins when a claimant is incapacitated because of asbestosis or silicosis from earning in the same *or any other employment* the wages he earned at the time of his last injurious exposure to silicosis or asbestosis. The statute simply does not require that the "any other employment" be a "dusty" trade. Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it plain and definite meaning. *State ex rel. Utilities Commission v. Edmisten*, 291 N.C. 451, 232 S.E. 2d 184 (1977).

[3]  Even if the *Taylor* "dusty trades" requirement was read into G.S. § 97-54 in silicosis cases, we hold there is sufficient evidence in the record to support the Industrial Commission's finding of fact that claimant was disabled in 1981. Under G.S. § 97-54, a claimant is disabled when he is unable to earn wages comparable to those he earned at the time of his last exposure to an injurious substance. There is no showing in the case before us, that claimant was unable to work in dusty trades between 1978, when he learned he had silicosis, and 1981, when he resigned from his painting job. It is true that claimant's doctor recommended in 1978 that claimant refrain from further sandblasting, but this is not a sufficient showing that claimant was *unable* to earn comparable wages in a "dusty" trade had he chosen to do so. In fact, the uncontroverted testimony in the record shows that claimant asked for his old job as a sandblaster after he was discharged from the hospital in February, 1978, and again on several other occasions. The only apparent reason plaintiff did not return to his

sandblasting job, according to the evidence in the record, is because his employer told him there was no opening. Findings of fact by the Industrial Commission are conclusive on appeal when supported by competent evidence even though there is evidence to support contrary findings. *Dowdy v. Fieldcrest Mills, supra.* Defendants' brief does not discuss their assignment of error based on G.S. § 97-58(a), and this argument is therefore abandoned. Rule 28(a) of the Rules of Appellate Procedure. Defendant's assignment of error is overruled.

In their second assignment of error, defendants contend that the Full Commission erred in finding that plaintiff was disabled in October 1981. The evidence in the case at bar indicates that claimant resigned his painting job in August, 1981 because of his health. At that time plaintiff's condition fulfilled the requirements of G.S. § 97-54, since plaintiff was then no longer capable of earning wages comparable to those he earned at the time of his last injurious exposure—that is, the last day he worked as a sandblaster in 1978. While we hold that the Industrial Commission erred in holding that claimant was disabled in October, 1981, we fail to see how this error prejudiced defendants in any way. Claimant filed his claim in October, 1981, well within the two year period counting either from August or October of 1981. Defendants' assignment of error is overruled.

Affirmed.

Judges WEBB and WHICHARD concur.