SAM SINGLETON (EMPLOYEE) v. D. T. VANCE MICA COMPANY (EM-
PLOYER), ST. PAUL MERCURY INDEMNITY COMPANY (CARRIER).

(Filed 26 March, 1952.)

1. **Master and Servant § 43—Claim for disablement from silicosis held
   timely filed.**

   The evidence was to the effect that claimant was sent a copy of a letter written by the Director of the Division of Industrial Hygiene to the employer stating that an examination of claimant revealed "evidence of dust disease" and merely suggesting that he be transferred to some other location where dust hazard would be negligible, and that less than a year before filing claim, claimant received a copy of a letter from a physician to the Health Department categorically stating that claimant had advanced

silicosis. *Held:* The first letter was insufficient to put claimant on notice that he had silicosis, and the evidence sustains the finding of the Industrial Commission that claimant was first advised by competent medical authority that he had silicosis at the time of receiving the second letter and that the claim was timely filed.

**2. Master and Servant § 40f—Evidence held sufficient to sustain finding that claimant was disabled from silicosis within two years from last exposure.**

Medical expert evidence to the effect that claimant was suffering from advanced silicosis prior to the termination of his employment, together with testimony by claimant that less than two years after his last injurious exposure to the hazards of silicosis in the employment, claimant was unable to work more than a few hours at a time because of shortness of breath, *is held* sufficient to support the finding of the Industrial Commission that claimant became disabled within the meaning of G.S. 97-54 within two years of his last injurious exposure to the hazards of the disease, G.S. 97-58 (a). The distinction between disablement as defined by G.S. 97-54 and ordinary disability as defined by G.S. 97-2 pointed out.

**3. Same—**

The existence of silicosis must be established by competent medical authority, but where the existence of the disease is established by medical expert evidence, the time at which claimant later became disabled therefrom may be established by non-medical testimony, it being competent for claimant to testify as to his lessened capacity to work, shortness of breath, and the effect that physical exertion had upon him.

APPEAL by defendants from *Gwyn, J.,* October Term, 1951, of AVERY.

This is a proceeding for compensation under the provisions of the North Carolina Workmen's Compensation Act, for disability due to silicosis.

The first hearing on this proceeding was before Commissioner J. W. Bean, at Newland, North Carolina, on 10 August, 1950, upon the testimony of the plaintiff and his wife, Margaret E. Singleton, and Dr. C. D. Thomas, Medical Director of the Western North Carolina Sanatorium, admitted to be a medical expert, and Dr. Otto J. Swisher, Director of Industrial Hygiene of the State of North Carolina, an admitted medical expert, together with certain documentary evidence.

Claimant, Sam Singleton, 69 years of age at the time of the hearing, a man unable to read or write, and whose memory was very poor, testified that he was employed by David T. Vance for about a year and a half, and left his employment, "I believe it was in 1945"; that about one year after leaving David T. Vance he became disabled to work. "I stayed able to work for right around a year after I quit the mill. . . . I am now unable to do a thing and have been totally disabled for right smart over a year. About a year and a half ago I could work for two or three hours and then have to quit. Now it hurts me to walk a few steps and I can't

SINGLETON *v.* MICA CO.

work at all. My breath gets so short I can't climb a little hill or steps. I guess I spend half of the time or more in bed now. . . . I was first informed that I had silicosis when that letter there was mailed (referring to letter sent to him by the Health Department, Newland, North Carolina, on or about 5 March, 1949). It's been a little bit over a year ago that I had first notice. . . . This letter is the first time that I ever thought about having silicosis at all." He further testified that while employed by David T. Vance, his duties were those of grinding and bolting mica; that he looked after sacking mica and that there was always mica dust around where he was working. "I worked at the sacker. When a sack weighing 100 pounds was filled, I would take it off and tie it. The dust was pretty bad about all the time right there at the hopper where the mica fell through. It came out right there at your face almost as a continuous condition." He also testified that before working for David T. Vance, he was employed by Vance & Barrett Mica Company for about eight years; that his duties were bolting and sacking mica for this company. That prior to his employment by the Vance & Barrett Mica Company he was employed for ten or twelve years by the English Mica Company.

Margaret E. Singleton, wife of the claimant, testified that her husband could not read or write; that she and her daughter did the reading and writing for him, and, as far as she knew, the first information the claimant had that he had silicosis, or any dust disease, was when he received a copy of a letter dated 21 February, 1949, from Dr. J. A. Byrnes, addressed to the Health Department, Newland, North Carolina. This letter was introduced in evidence by the plaintiff, and was enclosed in an envelope addressed to Mr. Sam Singleton, Pyatte, North Carolina, from the Health Department, Newland, North Carolina, postmarked 5 March, 1949.

Dr. C. D. Thomas testified that he examined the claimant on 24 June, 1949, and diagnosed his case as being advanced silicosis. He further testified he did not mail any of his reports directly to the claimant; that he mailed his reports to the Health Department.

In a report made by Dr. Thomas, dated 7 July, 1949, to Dr. W. B. Burleson, Plumtree, North Carolina, copies of which report were mailed to Dr. Otto J. Swisher and Mr. Hughes, attorney for the claimant, Dr. Thomas in describing the claimant's condition at that time, said: "There is marked accentuation of the trunks and nodulation in their outline. Over the inner mid-zone of the lung, below the level of the fourth rib anteriorly there are some fuzzy densities. When compared with the previous films made at the District Health Department at Spruce Pine, N. C., on 6-3-49 and 5-9-49 and 2-10-49, there has been no appreciable change. The densities in these films are, I feel, due to advanced silicosis.

There is no evidence of tuberculosis. It is my opinion that this man has advanced silicosis which is not complicated, and that the changes due to this disease are the cause of his symptoms. I feel that he is totally disabled, and should, of course, have no further exposure to dust." The report stated his blood pressure was 116 systolic and 78 diastolic, and his pulse 84.

Dr. Otto J. Swisher testified for the plaintiff: "I have not made a physical examination of Sam Singleton. As Director of the Division of Industrial Hygiene, I have studied the record of his physical examination in 1936 by Dr. Easom, his examination on August 10, 1942, by Dr. Grislow, his examination on October 8, 1943, by Drs. Vestal and Quickel, and the examination by Dr. Thomas. In my opinion, based on the study of these several examinations and medical history and record, is that Mr. Singleton has silicosis second stage. I have prepared a case history and medical report on Mr. Singleton and filed it with the Industrial Commission. On July 19, 1948 (1949), I filed a supplemental report adopting Dr. Thomas' report. . . . I have an opinion that Mr. Singleton is now totally disabled."

The report filed with the Industrial Commission by Dr. Swisher, which was introduced in evidence by the plaintiff, discloses the following pertinent information: (1) Dr. Easom examined the claimant on 18 November, 1936. This was the first examination of the claimant by the Division of Industrial Hygiene. This report states that Singleton had been a mica grinder for the past twenty-four years and that the X-ray interpretation revealed, "final diagnosis of pneumonoconiosis, second stage, without definite symptoms." It was also stated that his blood pressure was 130 systolic and 88 diastolic, and his pulse 60. (2) That Dr. Vestal examined the claimant on 10 August, 1942. It was stated in the report that the claimant was 61 years of age; that he was employed by Ira Vance Mica Company at Plumtree; that claimant stated, "he has had the specific job of mica grinder for the past four years giving him a total of 30 years in the dusty trades at the mica mill. . . . States he has been short of breath for the past 2 years." Interpretation of the X-ray taken at that time, "as compared with the previous film of 18 November, 1936, reveals a slight increase in fibrosis with final diagnosis of moderately advanced silicosis." Blood pressure was 130 systolic and 90 diastolic, and his pulse was 72. Dr. Vestal, on 17 August, 1942, wrote Singleton's employer that his examination of the claimant, "reveals evidence of dust disease, and we would like to suggest that, if possible, he be transferred to some other location in your organization where the dust hazard will be negligible." This letter was signed by Dr. T. F. Vestal as Director of the Division of Industrial Hygiene. A copy of this letter was marked, "I.C. COPY ONLY," and carried this additional information to the Industrial Com-

mission: "This man is 61 years old. He has a history of approximately 30 years in mica. He now has moderately advanced silicosis. Unless his present employer can transfer him to some suitable location, where his dust exposure will be negligible, we have little to suggest for him. We doubt the advisability of trying to rehabilitate him. TFVestal." (3) Drs. Vestal and Quickel examined the claimant on 8 October, 1943. The report states that Singleton was employed at that time by the David T. Vance Company at Plumtree; that his occupational history gave him 31 years and 2 months in dusty trades and that the interpretation of his X-ray, made at that time, "as compared with the film of August 10, 1942, revealed slight progression with final diagnosis of Silicosis II, progressing. Recommendation made that he be employed with present employer only and no work card was issued." This report stated his blood pressure was 160 systolic and 100 diastolic, and his pulse 78.

In addition to the above report, letters were introduced written by Dr. C. D. Thomas on 24 May, 1948, and 9 June, 1948. The letter written on 24 May, 1948, was from the Avery-Mitchell-Yancey District Health Department, to the County Health Department, Spruce Pine, N. C., with respect to chest X-ray film of Sam Singleton. Dr. Thomas stated the film was not technically very satisfactory and recommended that another film be made. This was done and the report mailed to the County Health Department, Newland, N. C., 9 June, 1948. Dr. Thomas stated: "Chest X-ray film of Sam Singleton, . . . shows on each side from the fourth rib anteriorly to the base increased densities which are fuzzy in appearance, and over the remainder of the chest is accentuation of the trunks and nodulation in their outline. This film gives the impression of a moderately advanced silicosis, with associated infection at the base on each side which is probably the results of chronic respiratory infection."

Friel Tate Vance testified for the employer, as follows: "I am General Superintendent for my father, David T. Vance, in the operation of his mica interest. I keep all my father's books and records. According to my records, the plaintiff began work for David T. Vance on October 5, 1943, and quit September 16, 1944. . . . I received a copy of Mr. Singleton's notice of claim somewheres along (sic) the 7th day of June, 1949. . . . He left our employment of his own accord and gave no reason."

Upon the stipulations made by the parties and the evidence offered at the hearing, the Commissioner found the following facts: (1) That the parties were subject to and bound by the Compensation Act and that the defendant Indemnity Company was the insurance carrier for the defendant employer. (2) That from 5 October, 1943, until 16 September, 1944, the plaintiff was regularly employed by the defendant employer at an average weekly wage of $16.00. (3) That the plaintiff was exposed to

silica dust in North Carolina for a period of two years or longer, within the last ten years, within the meaning of G.S. 97-63, and was exposed to the hazards of silicosis while working for the defendant employer, for as much as thirty working days or parts thereof, within seven consecutive calendar months immediately preceding the last date of exposure on 16 September, 1944. (4) That the plaintiff is now suffering from silicosis in its second stage, and his last exposure, as defined in G.S. 97-57, occurred while the plaintiff was in the defendant's employment on and immediately prior to 16 September, 1944. (5) That plaintiff is actually incapacitated because of silicosis from performing manual labor in the last occupation in which remuneratively employed, within the meaning of G.S. 97-54, and that such disablement occurred on or about 16 September, 1945, the same being within two years from the date the claimant was employed by the defendant employer. (6) That plaintiff was first notified by competent medical authority that he had silicosis, on or about 5 March, 1949, when he received in the due course of mail from the Health Department at Newland, N. C., a letter addressed to said Health Department, and signed by Dr. J. A. Byrnes, resident physician of the Western North Carolina Sanatorium at Black Mountain, N. C. (7) That plaintiff filed his claim for compensation under date of 7 June, 1949, and said claim was received by the Industrial Commission on 10 June, 1949. (8) That the plaintiff is a man 69 years of age, possessing no education, unable to read or write, confined to his bed approximately one-half of the time, and totally disabled; that there is no reasonable basis for the conclusion that he possesses the actual or potential capacity of body and mind to work with substantial regularity, during the foreseeable future in any gainful occupation free from the hazards of silicosis; that he is not a fit subject for rehabilitation under the provisions of G.S. 97-61.

Upon the findings of fact, the Commissioner held, as a matter of law, that the claim was filed in apt time and that said claim is not barred by the provisions of G.S. 97-58 (a), and awarded the claimant compensation at the rate of $9.60 per week, commencing as of 16 September, 1945, and continuing for a period not exceeding 400 weeks, or a total sum of $6,000.

The defendants appealed to the Full Commission which affirmed the award of the hearing Commissioner. On appeal to the Superior Court, his Honor overruled the defendants' exceptions to the findings of fact and conclusions of law, and affirmed the conclusions of law and the award entered below. Defendants appealed to the Supreme Court, assigning error.

*Charles Hughes* for claimant, appellee.
*Uzzell & DuMont* for defendants, appellants.

DENNY, J.   This appeal challenges certain findings of fact made by the hearing Commissioner, which findings were upheld by the Full Commission and sustained by the trial judge on appeal to the Superior Court. The challenge to these findings presents the following questions: (1) Is there any competent evidence to support the finding that the claimant was first notified by competent medical authority on or about 5 March, 1949, that he had silicosis?   (2) Is the finding that the claimant became disabled within the meaning of G.S. 97-54, within two years of his last injurious exposure to the hazards of silicosis, as provided in G.S. 97-58 (a), supported by competent evidence?   (3) May the Commission consider evidence other than expert medical testimony in finding that disablement of a claimant occurred within two years from date of last exposure to the hazards of silicosis?

There is no evidence on this record to the effect that any notice was given to the claimant advising him that he had silicosis prior to his receipt of a copy of the letter written by Dr. J. A. Byrnes, resident physician, Western North Carolina Sanatorium, Black Mountain, North Carolina, addressed to the Health Department, Newland, North Carolina, dated 21 February, 1949, which copy was forwarded to claimant on or about 5 March, 1949, and received by him in due course of mail.   There is an indication that a copy of the letter written by the Director of the Division of Industrial Hygiene, addressed to Vance-Barrett, Inc., Plumtree, North Carolina, dated 17 August, 1942, was mailed to the claimant. The letter was introduced in evidence by the defendants and the following notation appears thereon: "cc: Mr. Sam L. Singleton, N.C. Industrial Commission, Compensation Rating & Inspection Bureau (2)." Conceding that the claimant received a copy of this letter, as the defendants contend, it should be noted that it is only stated in the letter that the examination reveals, "evidence of dust disease," and a mere suggestion, not a recommendation, that the claimant "be transferred to some other location in your organization where the dust hazard would be negligible."

Advising an employee, who has been exposed to free silica dust, that his examination reveals "evidence of dust disease," is not sufficient to put him on notice that he has silicosis.   *Autrey v. Mica Co.*, 234 N.C. 400, 67 S.E. 2d 383.

Moreover, the information given in the above letter did not reveal the seriousness of the condition of Sam Singleton at that time.   The true condition of the employee was not disclosed in the letter, but was revealed only to the Industrial Commission in a footnote added to a copy thereof. The record report of the examination of Sam Singleton on 10 August, 1942, upon which the information contained in the above letter purports to have been based, shows more than mere "evidence of dust disease." The record reveals that Mr. Singleton stated he had been "short of breath

11—235

for 2 years," and the interpretation of the X-ray made at that time revealed, as compared with previous film of 18 November, 1936, "a slight increase in fibrosis with final diagnosis of moderately advanced silicosis." The Director of the Division of Industrial Hygene evidently realized his letter did not disclose the true condition of the employee, otherwise it would not have been necessary to add the following statement on the copy to the Industrial Commission: "This man is 61 years old. He has a history of approximately 30 years in mica. He now has moderately advanced silicosis. Unless his present employer can transfer him to some suitable location, where his dust exposure will be negligible, we have little to suggest for him. We doubt the advisability of trying to rehabilitate him."

Furthermore, there is no evidence in the record showing that the diagnostic findings, resulting from the examination of the plaintiff on 18 November, 1936, which disclosed that he had "pneumoconiosis, second stage, without definite symptoms," or from his examination on 8 October, 1943, which revealed that he had "Silicosis II, progressing," were communicated to him or to his employer.

In our opinion, the evidence does support the finding of the hearing Commissioner to the effect that the claimant was first notified by competent medical authority on or about 5 March, 1949, that he had silicosis.

On the second question, it is apparent from the claimant's testimony and the notice and claim filed by him, that he was under the impression that disablement meant inability to do work of any kind. It is clear he did not comprehend the distinction between disablement as defined in G.S. 97-54, and ordinary disability as defined in G.S. 97-2. This distinction was clearly pointed out in the case of *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797, by *Justice Ervin* speaking for the Court, in which he said: "It is to be noted that there is a radical difference between the criterion of disability in cases of asbestosis and silicosis and that of disability in cases of injuries and other occupational diseases. An employee is disabled by injury or an ordinary occupational disease within the purview of the Workmen's Compensation Act, only *if he suffers incapacity because of the injury or disease to earn the wages which he was receiving at the time of the injury or disease in the same or any other employment.* G.S. 97-2. But a worker is disabled in cases of asbestosis or silicosis *if he is 'actually incapacitated, because of such occupational disease, from performing normal labor in the last occupation in which remuneratively employed.'* G.S. 97-54." *Duncan v. Carpenter,* 233 N.C. 422, 64 S.E. 2d 410.

The question of claimant's disablement is, therefore, not whether he became incapacitated to do work of any kind within two years of his last exposure to the hazards of silicosis, but whether he became disabled or

incapacitated within two years of his last exposure to free silica dust, "from performing normal labor in the last occupation in which remuneratively employed." G.S. 97-54; *Duncan v. Carpenter, supra.*

The defendants contend there is no causal connection between the plaintiff's alleged disability which occurred after he left the employment of the defendant employer, and his silicotic condition which was contracted prior to November, 1936. This contention is without merit. It is provided in G.S. 97-57: "In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable." *Bye v. Granite Co.,* 230 N.C. 334, 53 S.E. 2d 274. And this section further provides, "when an employee has been exposed to the hazards of asbestosis or silicosis for as much as thirty working days, or parts thereof, within seven consecutive calendar months, such exposure shall be deemed injurious . . ." *Haynes v. Feldspar Producing Co.,* 222 N.C. 163, 22 S.E. 2d 275.

There can be no serious question about the plaintiff having been exposed to free silica dust for more than 30 years. Neither can there be any doubt about his having been exposed to the hazards of silicosis for as much as thirty working days or parts thereof, within seven consecutive calendar months, immediately preceding 16 September, 1944, the date he left the employment of the defendant employer.

This plaintiff is clearly entitled to compensation if his disablement occurred within two years from the time he left the employment of David T. Vance, and such disablement resulted from silicosis. *Duncan v. Carpenter, supra.* The plaintiff testified that he became disabled to work about a year after he quit the mill and there is no evidence to the contrary. And the fact that he was not certain when he quit the mill is of no material importance on this record, since that date was definitely established by the employer. The evidence further supports the view that the plaintiff has been totally disabled, due to silicosis, at least since the early part of 1948. Prior thereto, according to his evidence, he could work only two or three hours at a time. His shortness of breath incapacitated him from working longer. There is no evidence of his having held a job of any kind since he left the mica mill. He testified: "I never done much after I quit the mill. I farmed two years after I quit."

We think the evidence was sufficient to support the finding that the claimant was disabled within the meaning of G.S. 97-54, and that such disablement occurred within two years of his last exposure to the hazards of silicosis.

The conclusion we have reached in answer to the second question stated, presupposes an affirmative answer to the third question posed for decision.

In the case of *Duncan v. Carpenter, supra,* it is said: ". . . that the finding of the competent medical authority must be to the effect that disablement occurred within two years from the last exposure in cases of asbestosis, silicosis and lead poisoning, and in claims involving other occupational diseases that disability occurred within one year thereof."

The defendants contend that in view of the above statement, where disablement occurs as defined in G.S. 97-54, and notice of claim is filed in accord with the provisions contained in G.S. 97-58 (a), (b), and (c), as interpreted by this Court in that case, the claimant must be advised by competent medical authority that he has silicosis and that such advice must be given within two years from the date of his last exposure. We decided this precise point to the contrary in *Autrey v. Mica Co., supra.* Moreover, it was not the intention of the Court to hold that no evidence would be admitted or considered in establishing disability within the meaning of G.S. 97-54, except expert medical testimony. Examination of the record in that case, however, will reveal that the examinations of the claimant made prior to the time he quit work, did not disclose any definite evidence that he had developed silicosis. But the expert medical testimony did show conclusively that disability due to silicosis occurred within two years of his last exposure to the hazards of such disease.

Silicosis is an inflammatory disease of the lungs due to the inhalation of particles of silicon dioxide. It is incurable and is one of the most disabling occupational diseases because it makes the lungs susceptible to other infection, particularly tuberculosis. According to the textbook writers, it has been definitely determined that the removal of a man, who has silicosis, from silica exposure, does not stop the progress of the disease at once, but that fibrotic changes continue to develop for another one or two years. This is said to be due to the continuous chemical action of the silica that has been stored in the phagocytic cells and lymphatics. Gray: Attorneys' Textbook of Medicine (3rd Ed.), Volume 2, Chapter 147, pp. 1583-1596; Reed and Harcourt: The Essentials of Occupational Diseases, pp. 161-174; Reed and Emerson: The Relation Between Injury and Disease, pp. 182-186; *Young v. Whitehall Co., supra.*

Gray, in his textbook cited above, on page 1591, says: "The changes within the lung upon inhalation of minute silica particles may best be demonstrated during life by the X-ray. As the 'scavenger cells' carry silica from the alveoli toward the lymphatic glands, damaged cells are gradually replaced with scar tissue. Fibrosis occurs. Deeper and deeper within the lung framework, this replacement goes on. The X-ray pictures the changes, and the findings serve to classify the degree of disease progress."

The defendants insist that the Commission's finding to the effect that claimant's disablement, within the meaning of G.S. 97-54, occurred within

two years of his last exposure, was based on the unsupported testimony of the claimant without any medical corroboration. We do not concur in this view.

The evidence discloses more than the testimony of the claimant that he was disabled to work within one year of the time he left the employment of the defendant employer. It includes the record of various medical examinations made prior to the time of disablement, as well as the interpretations of X-rays made in 1936, 1942, 1943, 1948, and 1949. The X-ray in 1936 revealed that the plaintiff had pneumoconiosis, which term includes the manifestations of all dust inhalations whether the dust is injurious or harmless. Goldstein and Shabat: Medical Trial Technique, page 773. The interpretation of the X-rays made in 1942 and 1943 revealed that the plaintiff had "Silicosis II, progressing," for at least a year before he left the employment of the defendant employer. The interpretation of the X-rays made in 1948 and 1949 revealed total disability due to silicosis.

In our opinion, due to the nature of silicosis, it is essential to establish the presence of the disease by competent medical authority. But, where it has been established that a person who has been exposed to free silica dust has developed silicosis to the extent that it may be disabling, testimony other than that of a medical expert may be admitted and considered in determining when such person actually became disabled to work or disabled "from performing normal labor in his last occupation in which remuneratively employed." G.S. 97-54. Certainly, a victim of silicosis is competent to testify to his lessened capacity to work, his shortness of breath, the effect that physical exertion has upon him—all of which are normal symptoms of silicosis.

When all the evidence on this record is considered, including the fact that the plaintiff has been totally disabled from silicosis since 1948, and enfeebled to the extent that he could not work more than two or three hours at a time for a considerable time prior thereto, we think such evidence, together with the inferences that may be fairly and reasonably drawn therefrom, the findings of the Commission and the conclusions of law drawn from such findings, must be upheld. *Hildebrand v. Furniture Co.,* 212 N.C. 100, 193 S.E. 294; *Lockey v. Cohen, Goldman & Co.,* 213 N.C. 356, 196 S.E. 342; *Blassingame v. Asbestos Co.,* 217 N.C. 223, 7 S.E. 2d 478; *McGill v. Lumberton,* 218 N.C. 586, 11 S.E. 2d 873; *Kearns v. Furniture Co.,* 222 N.C. 438, 23 S.E. 2d 310; *Hegler v. Mills Co.,* 224 N.C. 669, 31 S.E. 2d 918; *Rewis v. Insurance Co.,* 226 N.C. 325, 38 S.E. 2d 97; *Riddick v. Cedar Works,* 227 N.C. 647, 43 S.E. 2d 850.

The judgment of the court below is
Affirmed.