ROY E. McKEE, EMPLOYEE v. CRESCENT SPINNING COMPANY, EMPLOYER, AND THE TRAVELERS INSURANCE COMPANY, CARRIER

No. 8110IC159

(Filed 17 November 1981)

1. **Master and Servant § 68 — workers' compensation — occupational disease — contributing factors**

   In a workers' compensation case where the evidence showed that plaintiff's chronic bronchitis and byssinosis were related to plaintiff's exposure to cotton dust, it was of no consequence that the Commission failed to find that the plaintiff's chronic bronchitis was a contributing factor to his disability.

**2. Master and Servant § 68— occupational disease—claim not barred by notice provisions**

The Workers' Compensation Act contemplates that two events must occur before a worker's compensation claim ripens and the notice provisions of G.S. 97-22 and G.S. 97-58 are triggered: (1) injury from an occupational disease; and (2) disability. Therefore, plaintiff met the first precondition of his claim where the evidence showed that plaintiff worked with defendant until 22 December 1971, that prior to that time he had been informed by doctors that he had a "breathing problem" and "brown lung," but that plaintiff was unaware that his breathing difficulty was connected with his exposure to cotton dust until August of 1978 and where he gave notice to his employer of a claim on 22 May 1978, and he met the second precondition when he could work and earn wages no longer in December 1971.

APPEAL by defendants from the Opinion and Award of the North Carolina Industrial Commission entered 2 September 1980. Heard in the Court of Appeals 17 September 1981.

Plaintiff filed a claim for workers' compensation benefits with the Industrial Commission on 22 May 1978. At the hearing before Deputy Commissioner Lawrence B. Shuping, Jr., plaintiff's testimony tended to show that he had dropped out of school in the ninth grade and worked in cotton mills for 37 years thereafter. Plaintiff smoked cigarettes for nine years but quit at age 27 when told the mill "didn't allow you to smoke." For the past six or seven years he was employed by defendant Crescent Spinning Company. Plaintiff developed health problems and was advised by physicians in 1966 that he had a "breathing problem," and in 1970 that he had "brown lung." However, neither physician explained the cause of the disease. Plaintiff continued working until 22 December 1971. One week before his layoff, a physician advised plaintiff that he had a "breathing problem." Sometime in 1978 another physician told plaintiff he had "chronic obstructive lung disease," but at that time plaintiff was unaware that his breathing difficulty was connected with his exposure to cotton dust.

Dr. T. Reginald Harris testified that he examined plaintiff in August 1978 and diagnosed plaintiff's condition as severe obstructive lung disease causing a substantial reduction in lung capacity. He further testified that plaintiff's activities had been reduced to "feeding, clothing himself, riding in an automobile and walking short distances in the house and outside at a slow rate." Dr. Harris concluded that plaintiff "probably does have byssinosis;"

however, he also testified that "McKee has a chronic obstructive lung disease, byssinosis, probable, but there is present chronic bronchitis." Dr. Harris stated that plaintiff's pulmonary disease was caused by his exposure to cotton dust, but he could not say the occupational exposure was the only factor involved. He further testified that the byssinosis and the chronic bronchitis contributed to plaintiff's permanent disability.

On 18 December 1979 Deputy Commissioner Shuping entered his Opinion and Award, concluding that plaintiff contracted byssinosis as a result of his exposure to cotton dust in his employment, that byssinosis is an occupational disease, that plaintiff's claim was timely filed, and that plaintiff was entitled to compensation. On 2 September 1980 the Full Commission entered its Opinion and Award, adopting entirely the conclusions of the deputy commissioner. Defendants appealed.

*Frederick R. Stann for Roy E. McKee, plaintiff-appellee.*

*Boyle, Alexander, Hord & Smith, by B. Irvin Boyle, for Crescent Spinning Company and The Travelers Insurance Company, defendant-appellants.*

HILL, Judge.

[1] Our review of an award by the Industrial Commission is limited to two questions: (1) whether the Commission's findings are supported by competent record evidence; and (2) whether those findings justify the Commission's conclusions of law. *Inscoe v. DeRose Industries*, 292 N.C. 210, 232 S.E. 2d 449 (1977); *Walston v. Burlington Industries*, 49 N.C. App. 301, 271 S.E. 2d 516 (1980). In their first two assignments of error defendants argue that the Commission erred in its finding that plaintiff's byssinosis was the cause of his pulmonary disease because of evidence that chronic bronchitis was present when the byssinosis first was diagnosed. Defendants assign as error the Commission's failure to conclude that plaintiff's byssinosis was secondary to his chronic bronchitis, contending chronic bronchitis was the disabling factor and is not attributable to plaintiff's employment. We do not agree.

There is no evidence to support defendants' contention that plaintiff's byssinosis was secondary to his chronic bronchitis.

Defendants apparently draw their conclusion from Dr. Harris's testimony that "Mr. McKee has a chronic obstructive lung disease, byssinosis, probable, but there is *present* chronic bronchitis. I was positive of the bronchitis and in my opinion there was a probability of byssinosis." (Emphasis added.) There is, however, plenary evidence that plaintiff's "chronic obstructive lung disease" — both chronic bronchitis and byssinosis — was related to his employment; Dr. Harris's medical report, stipulated into evidence by the parties, so states. Since the evidence shows that both types of "chronic obstructive lung disease" were related to plaintiff's exposure to cotton dust, it is of no consequence that the Commission failed to find that the plaintiff's chronic bronchitis was a contributing factor to his disability. We therefore overrule these assignments of error.

[2] In their remaining assignments of error, defendants argue that plaintiff's claim for benefits was barred by the notice provisions of G.S. 97-22 and 97-58. Defendants contend that notice of plaintiff's injury to his employer required by G.S. 97-22 was filed well beyond "the date that the employee [was] advised by competent medical authority that he [had an occupational disease]." G.S. 97-58(b). We do not agree and overrule these assignments of error.

The Workers' Compensation Act [the Act] contemplates that two events must occur before a workers' compensation claim ripens and the notice provisions are triggered: (1) injury from an occupational disease; and (2) disability. In *Taylor v. J. P. Stevens & Co.*, 300 N.C. 94, 102, 265 S.E. 2d 144, 149 (1980), our Supreme Court determined that, "with reference to occupational diseases the time within which an employee must give notice or file claim begins to run when the employee is first informed by competent medical authority of the *nature and work-related cause of the disease.*" (Emphasis added.) Thus, notification of injury in the manner quoted above is a necessary element of the claim. A finding of the date of disability also is necessary to determine which version of the Act to apply in determining benefits. *See Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979). We first must determine, then, at what point plaintiff was informed of the "nature and work-related cause" of his condition.

Defendants contend that plaintiff was properly informed of his injury in 1966 when Dr. McDowell told plaintiff he had a

"breathing problem and if it didn't soon get better to get out of the mill." Defendants contend that plaintiff was further informed in 1970 when Dr. McTesson made his "brown lung" diagnosis. Merely stating one has a "breathing problem and if it didn't soon get better to get out of the mill" or a simple diagnosis of "brown lung" neither advised plaintiff of the nature nor work-related cause of his condition.

In *Singleton v. D. T. Vance Mica Co.*, 235 N.C. 315, 321, 69 S.E. 2d 707, 711 (1952), a workers' compensation claimant received a copy of a letter from his doctor stating that examination revealed " 'evidence of dust disease' " with a recommendation that the claimant " 'be transferred to some other location . . . where the dust hazard would be negligible.' " This advice was found not sufficient to give notice of silicosis, an occupational disease. *Id.* Similarly, "[i]t is not enough that the workman be told a medical name for his disease, which may be meaningless to him, without a statement of its causal relationship to an extra-hazardous occupation." *Williams v. Dept. of Labor & Industries*, 45 Wash. 2d 574, 576, 277 P. 2d 338, 339 (1954). Thus, where there is no evidence in the record that "any doctor at any time prior to the filing of the claim specifically told [the claimant], simply and directly, that his condition arose out of his employment or anything clearly to that effect," there is no proper notice of injury to the employee. *Templeton v. Pope & Talbot, Inc.*, 7 Ore. App. 119, 120-21, 490 P. 2d 205, 206 (1971). We find these cases in accord with the rule cited in *Taylor v. J. P. Stevens & Co., supra,* and their results determinative of the case *sub judice.*

Plaintiff first was informed of a "breathing problem" in 1966. This diagnosis was accompanied only by an admonition to "get out of the mill"; a recommendation similar, if not less specific, than that given in *Singleton v. D. T. Vance Mica Co., supra.* Plaintiff testified that in 1970 "a Dr. McTesson told me I had brown lung but he did not tell me what brown lung was. I didn't know it amounted to anything except I had it. I didn't know what caused it and the doctor never told me what caused it." We note that "brown lung" is not a "medical name" but slang terminology for byssinosis. In 1970, when this diagnosis was made, the term clearly was meaningless to plaintiff. "[O]ur legislature never intended that a claimant for workers' compensation benefits would have to make a correct medical diagnosis of his own condition prior to

notification by other medical authority of his disease in order to timely make his claim." *Taylor v. J. P. Stevens & Co., supra* at 102, 265 S.E. 2d at 149. Likewise, plaintiff cannot be expected to inquire further and discover the relationship of his condition to his employment. *Nelson v. Industrial Comm'n*, 120 Ariz. 278, 585 P. 2d 887 (1978). Plaintiff therefore was not properly informed in 1966 and in 1970 of the "nature and work-related cause" of his condition as required under G.S. 97-58(b).

As to the existence of the first precondition of plaintiff's claim, there is no bar since he gave notice thereof to his employer on 22 May 1978, almost three months before the record shows he was first informed by competent medical authority of the existence of his disease. G.S. 97-22; 97-58(b).

We now turn to a determination of the second event — disability — to decide whether the Commission erred in concluding plaintiff's claim was timely filed. G.S. 97-55 defines "disability" for occupational diseases as "the state of being incapacitated as the term is used in defining 'disablement' in G.S. 97-54." G.S. 97-54 states that for occupational disease other than asbestosis and silicosis, "disablement" is equivalent to "disability" under G.S. 97-2(9). Under the latter statute, "disability" is defined as "*incapacity because of injury to earn the wages* which the employee was receiving at the time of injury in the same or any other employment." G.S. 97-2(9). (Emphasis added.)

In the case *sub judice*, plaintiff was not disabled until he could work and earn wages no longer. *See Fetner v. Rocky Mount Marble & Granite Works*, 251 N.C. 296, 111 S.E. 2d 324 (1959). It was stipulated, and the Commission found as fact, that plaintiff began working for defendant-employer on 7 March 1966 and quit working 22 December 1971. We find the Commission was correct in its conclusion of law that plaintiff was disabled from the time he stopped working. Therefore, the claim was timely filed since its two elements were met in 1978 when plaintiff was properly notified by Dr. Harris of his disease.

The Commission concluded, however, that plaintiff was "disabled" as of 7 March 1971 with the exception of a week of temporary employment thereafter. Plaintiff's compensation was computed as of 7 March 1971 according to G.S. 97-29 as it existed *before* the 1971 amendment thereto, effective 1 July 1971. We

believe the record supports the Commission's finding of fact that disability occurred on the latter date, 22 December 1971, rather than on 7 March 1971. The Commission then should have applied G.S. 97-29, *as amended,* and computed plaintiff's compensation as of 22 December 1971, the day he quit working. *See* 1971 N.C. Sess. Laws, c. 281, § 1; *see also Wood v. J. P. Stevens & Co., supra.*

Since the Commission's conclusion that plaintiff's disability occurred on 7 March 1971 is not supported by the facts as found, we remand this case to the Commission for a conclusion of law consistent with the facts and a re-computation of plaintiff's award as of 22 December 1971, with the exception of the week thereafter when plaintiff was temporarily employed. For these reasons, we

Affirm in part and remand the case to the Industrial Commission for entry of a Conclusion of Law consistent with this opinion. Plaintiff's motion for attorney's fees is denied.

Judges HEDRICK and WHICHARD concur.