KENT R. MAY, Employee v. SHUFORD MILLS, INC., Employer and AMERICAN MUTUAL INSURANCE COMPANY, Carrier

No. 8210IC1073

(Filed 4 October 1983)

**1. Master and Servant § 68— occupational disease—filing of claim timely**

In a workers' compensation case, the Industrial Commission properly found that plaintiff's claim was timely filed in February 1981 where plaintiff, mill worker, was told in 1957 to get out of the dust if he wanted to live longer but he was not advised that he had an occupational disease or condition and he was not advised that his breathing problems would be permanent. It was not until January 1981 that plaintiff was advised he had byssinosis which was caused by exposure to cotton dust, and this was the first time that plaintiff was advised by competent medical authority of the nature and work-related quality of his disease. G.S. 97-58(b) and (c).

**2. Master and Servant § 68— workers' compensation—occupational disease—pre-1957 version of statute not controlling**

Plaintiff's rights under the workers' compensation statute were not governed by the pre-1957 version since January 1, 1970 was the date plaintiff became incapable of earning wages and had to stop working due to his health, and an employee's right to compensation for an occupational disease is governed by the law in effect at the time of the disablement. G.S. 97-2(9); G.S. 97-55; G.S. 97-54; and G.S. 97-53(13).

APPEAL by defendants from the Opinion and Award of the North Carolina Industrial Commission entered 15 June 1982. Heard in the Court of Appeals 31 August 1983.

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by Mel J. Garofalo, for defendant appellants.*

*Frederick R. Stann, for plaintiff appellee.*

BECTON, Judge.

I

The issues in the appeal of this occupational disease case relate (a) to the date plaintiff was first advised by competent medical authority of the nature and work-related quality of his disease, and (b) to whether a pre-1957 version of N.C. Gen. Stat. § 97-53(13) pertains to plaintiff's claim.

II

Plaintiff filed a claim for compensation with the Industrial Commission on 27 February 1981. Plaintiff's testimony before the Deputy Commissioner tends to show the following:

Plaintiff was born in 1907. When he was 29 years old, he began working for defendant Shuford Mills (defendant) at its Highlands plant in the opening room where he remained for approximately twelve years. The opening room was very dusty. He left the Highlands plant because of the dust and worked in a West Virginia coal mine for a year. Upon returning to North Carolina, he worked at the Quaker Meadows plant for four years, starting in the dusty opening room and finishing as a picker operator. After he left, the Quaker Meadows plant was purchased by defendant. Plaintiff next worked in defendant's Dudley plant operating the pickers. The air in the Dudley plant was dusty but not as dusty as his previous textile jobs. He began to experience breathing difficulties and went to a Dr. Jones for treatment in 1957. According to plaintiff, Dr. Jones told him: "Kent, that dust is going to kill you. If you want to get any older, you better get out of it."

Based upon this advise, plaintiff decided to leave the Dudley plant. He advised management that he could not work in the dust any more. He was placed on a 30 day sick leave and transferred to a yard maintenance crew, where he worked until he retired in 1970 because of his health and breathing problems. While on the maintenance crew, he occasionally had to work inside the mill where he was exposed to dust.

On 9 January 1981, plaintiff was examined by Dr. Fred T. Owens, who testified that it was his opinion that plaintiff had byssinosis caused by exposure to cotton dust. It was also his opin-

ion that plaintiff's occupational exposure to cotton dust between 1957 and 1970 did not significantly affect plaintiff's disease, but that plaintiff's worsening condition was due to the natural course of the disease.

The Deputy Commissioner found as a fact and concluded as a matter of law that plaintiff has a compensable occupational disease. He also found as a fact and concluded as a matter of law that plaintiff's claim was barred because of his failure to file his claim either within two years of the date of the onset of his permanent disability, or within two years of the date on which he was advised by competent medical authority of the nature and work-related quality of his disease. The Full Commission reversed, finding as a fact that plaintiff was first advised by competent medical authority of the nature and work-related quality of his occupational disease on 9 January 1981. From an award of compensation to plaintiff, defendant and the Insurance Carrier (defendants) appeal.

### III

[1] Defendants first contend that the Commission erred in finding as a fact and concluding as a matter of law that there was no evidence that plaintiff was advised by Dr. Jones in 1957 of the nature and work-related quality of plaintiff's occupational disease and in further finding that plaintiff was first informed of the nature and work-related quality of his occupational disease on 9 January 1981 since Dr. Jones told plaintiff in 1957: "Kent, that dust is going to kill you. If you want to get any older, you better get out of it." We disagree.

N.C. Gen. Stat. § 97-58(b) and (c) (1979 & Supp. 1981) provide in pertinent part:

   (b) The report and notice to the employer as required by G.S. 97-22 shall apply in all cases of occupational disease except in cases of asbestosis, silicosis, or lead poisoning. The time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has same.

   (c) The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Com-

mission within two years after death, disability, or disablement as the case may be. . . .

Our Supreme Court has interpreted these two sections and has held that "with reference to occupational diseases the time within which an employee must give notice or file claim begins to run when the employee is first informed by competent medical authority of the nature and work-related cause of the disease." *Taylor v. J. P. Stevens & Co.*, 300 N.C. 94, 102, 265 S.E. 2d 144, 149 (1980). "[T]he two-year time limit for filing claims under G.S. 97-58(c) is a condition precedent with which claimants must comply in order to confer jurisdiction on the Industrial Commission to hear the claim." *Poythress v. J. P. Stevens & Co.*, 54 N.C. App. 376, 382, 283 S.E. 2d 573, 577 (1981), *disc. rev. denied,* 305 N.C. 153, 289 S.E. 2d 380 (1982).

In *Singleton v. D. T. Vance Mica Co.*, 235 N.C. 315, 321, 69 S.E. 2d 707, 711 (1952), our Supreme Court held that a letter to a workers' compensation claimant from his physician which stated that an examination of claimant revealed "evidence of dust disease" with a suggestion that the claimant "be transferred to some other location . . . where the dust hazard would be negligible" was not sufficient notice from competent medical authority that he had silicosis. The information given in the letter did not reveal the seriousness of the claimant's condition, nor was there any evidence that any diagnostic findings were communicated to the claimant. Similarly, citing *Singleton,* this Court in *McKee v. Crescent Spinning Co.*, 54 N.C. App. 558, 562, 284 S.E. 2d 175, 178 (1981), *disc. rev. denied,* 305 N.C. 301, 291 S.E. 2d 150 (1982), held that a physician's informing the plaintiff in 1966 that he had a "breathing problem and if it didn't soon get better to get out of the mill," and in 1970 that he had "brown-lung," "neither advised plaintiff of the nature nor work-related cause of his condition." Although the plaintiff in *McKee* was told he had brown lung, there was no evidence that he knew or was advised that the disease was related to his work environment.

In the present case, plaintiff was told to get out of the dust if he wanted to live longer. He was not advised that he had an occupational disease or condition, nor was he advised that his breathing problems would be permanent. There is no evidence in the record of plaintiff being diagnosed in 1957 as having

byssinosis or an obstructive lung disease. "[O]ur Legislature never intended that a claimant for workers' compensation benefits would have to make a correct medical diagnosis of his own condition prior to notification by other medical authority of his disease in order to timely make his claim." *Taylor v. J. P. Stevens*, 300 N.C. at 102, 265 S.E. 2d at 149. We find defendants' argument that plaintiff was aware of the causal relation between his breathing problems and his work environment as indicated by his testimony and his request for a transfer to be unpersuasive. Plaintiff simply took his physician's advice to avoid a hazard.

In support of their arguments, defendants cite several cases which are distinguishable on their facts. In *Payne v. Cone Mills Corp.*, 60 N.C. App. 692, 299 S.E. 2d 847, *disc. rev. denied*, 308 N.C. 387, 302 S.E. 2d 252 (1983), the plaintiff was informed by his physician that he would always have a breathing problem and that the physician could not completely cure it. The plaintiff in *McCall v. Cone Mills Corp.*, 61 N.C. App. 118, 300 S.E. 2d 245, *disc. rev. denied*, 308 N.C. 544, 304 S.E. 2d 237 (1983), was clearly advised of the nature and work-related quality of disease when a physician advised him in 1965 that he had byssinosis, and to change his employment at the mill and to avoid exposure to cotton dust. In *Poythress*, a physician diagnosed plaintiff's condition in 1963 as byssinosis caused by exposure to cotton dust and advised the plaintiff to stop working at the mill. In *Dowdy v. Fieldcrest Mills, Inc.*, 308 N.C. 701, 304 S.E. 2d 215 (1983), the plaintiff was diagnosed by one physician in 1973 as having a chronic obstructive lung disorder and was advised by a second physician in 1974 that he had byssinosis caused by exposure to cotton dust and to stop working at the mill.

In this case, the record shows that plaintiff was examined by Dr. Owens on 9 January 1981, and was advised that he had byssinosis caused by exposure to cotton dust. This was the first time that plaintiff was advised by competent medical authority of the nature and work-related quality of his disease, as the Commission properly found. Plaintiff's claim filed 27 February 1981 was, therefore, timely filed.

IV

[2] Defendants contend that the Commission erred in finding as a fact and concluding as a matter of law that plaintiff was entitled

to compensation for his occuaptional disease, byssinosis. They argue that a pre-1957 version of G.S. § 97-53(13), under which they contend byssinosis was not a compensable occupational disease, applies to plaintiff's claim. We disagree.

An employee's right to compensation for an occupational disease is governed by the law in effect at the time of the disablement. *Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979). The Commission properly found that plaintiff was disabled on 1 January 1970, which was the date he became incapable of earning wages and had to stop working due to his health. N.C. Gen. Stat. § 97-2(9); N.C. Gen. Stat. § 97-55; N.C. Gen. Stat. § 97-54; *Taylor v. J. P. Stevens.* The version of G.S. § 97-53(13) in effect at the time of plaintiff's disablement provided that the following shall be deemed to be occupational diseases within the meaning of this article:

> Infection or inflammation of the skin, eyes, or other external contact surfaces or oral or nasal cavities or any other internal or external organ or organs of the body due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

> The provisions of this subsection shall not apply to cases of occupational diseases not included in said subsection prior to July 1, 1963 unless the last exposure to an occupation subject to the hazards of such disease occurred on or after July 1, 1963.

N.C. Gen. Stat. § 97-53(13) (1965). The record shows that plaintiff was exposed to dust after 1 July 1963. G.S. § 97-53(13) (1965), effective on 1 July 1963, simply required *exposure* after 1 July 1963, not *injurious exposure*. Plaintiff's claim thus falls within G.S. § 97-53(13) (1965). This section clearly includes byssinosis, an occupational disease of the lungs.

## V

For the foregoing reasons, we affirm the opinion and award of the Commission.

Affirmed.

Judges JOHNSON and BRASWELL concur.