***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms and modifies the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Worker's Compensation Act.
2. An employee/employer relationship existed between the named employee and named employers at the times in question.
3. The carrier(s) liable on the risk is disputed — contested as to which carrier/employer is liable.
4. The employee's average weekly wage is to be determined by wage charts provided by defendants. Ms. Yang's average weekly wage at Adecco was $339.64, with a worker's compensation rate of $226.43.
5. The defendants contest that the employee started missing time from work because of occupational disease on or about June 22, 2005 and on or about March 17, 2006.
6. The defendants contest the disease arose out of and in the course of employment and is compensable.
7. Various medical records and other documents have been stipulated into evidence with the Pre-Hearing Agreement.
8. Issues for decision are:
 By plaintiff:
 (a) The employee requests defendants be ordered to provide job videos.
 (b) Determination of which employer and carrier is responsible and all compensation due.
 (c) Employee requests defendants provide all Dr. Crittenden records.
 By Hartford/Volex: *Page 3 
 (d) Did Plaintiff suffer a compensable illness or occupational disease arising out of her employment?
 (e) Did Plaintiff's employment with Volex cause Plaintiff's alleged occupational disease?
 (f) Was The Hartford the carrier on the risk when Plaintiff's illness or occupational disease arose?
 (g) Was The Hartford the carrier on the risk when Plaintiff was last injuriously exposed related to her alleged illness or occupational disease?
 (h) Whether Plaintiff is barred from receiving benefits under N.C. Gen. Stat. § 97-22 for failure to timely report her claim?
 (i) Whether Plaintiff is entitled to any indemnity or medical benefits under the Act?
 By Liberty Mutual Insurance/Volex:
 (j) Did Plaintiff's underlying conditions accrue prior to Liberty Mutual's coverage period?
 (k) Did Plaintiff develop a compensable occupational disease during its coverage period?
 (l) Did Plaintiff's employment during Liberty Mutual's coverage period place her at an increased risk of developing an occupational disease?
 (m) If Plaintiff's problems are the result of a compensable occupational disease, did her last injurious exposure occur during Liberty Mutual's coverage period?
 By Broadspire/Adecco: *Page 4 
 (n) Whether Plaintiff sustained a compensable occupational disease pursuant to N.C. Gen. Stat. § 97-53 (13).
 (o) Whether Plaintiff's employment with Adecco caused Plaintiff's alleged occupational disease.
 (p) Whether Plaintiff's employment with Volex caused Plaintiff's alleged occupational disease.
 (q) Whether Plaintiff's last injurious exposure to the alleged occupational disease occurred while Defendants Adecco and Broadspire were on the risk.
 (r) Whether Plaintiff's employment with Adecco aggravated or augmented Plaintiff's alleged occupational disease?
 (s) Whether Plaintiff is barred from receiving benefits under N.C. Gen. Stat. § 97-22 for her failure to timely report her claim to Adecco.
 (t) Whether Plaintiff is entitled to temporary total disability benefits pursuant to N.C. Gen. Stat. § 97-29 and Russell v. Lowes Prod. Dist., 108 N.C. App. 762 (1993).
 (u) Whether Plaintiff is entitled to payment of her medical treatment pursuant to N.C. Gen. Stat. § 97-25.
9. A January 25, 2007 NCV by Dr. Jeffrey Crittenden was stipulated into evidence with the April 14, 2008 letter of Attorney Prati. The NCV indicates results consistent with bilateral carpal tunnel syndrome, and is negative for other mononeuropathy plexopathy or radiculopathy of either upper extremity.
10. (a) The employee worked at Volex 5/99-6/22/05. *Page 5 
 (b) The employee worked for Adecco at Corning Cable 2/8/06-3/17/06.
 (c) Hartford provided coverage for Volex until 4/05.
 (d) Liberty Mutual provided coverage April 1, 2005 — end of employee's employment at Volex.
 (e) Broadspire provided coverage for Adecco while the employee worked there.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 50 years old. She is from Laos, and required a Hmong/English interpreter at the hearing. Plaintiff never went to school in Laos and only had some classes (apparently English classes) in the United States. Plaintiff is right hand dominant.
2. Plaintiff worked as a cable assembler at Defendant-Employer Volex from May 1999 to June 22, 2005. Most steps of the assembly process require repetitive use of the hands/arms, five-finger dexterity, and use of hand tools for 8-hour days/40-hour work weeks.
3. Plaintiff began working for Defendant-Employer Adecco on February 8, 2006, on assignment to Corning Cable. At Corning Cable, Plaintiff went through a training period and then performed production work for nine 12-hour shifts. Plaintiff last worked for Adecco on March 17, 2006. Plaintiff's job duties at Corning Cable also involved working with her hands.
4. Plaintiff had experienced prior problems with her hands at Volex that were handled as medical only claims with injury dates of March 19, 2001 and June 25, 2004. She was directed to Hart Industrial Clinic for both claims. After treatment for tenosynovitis of the right *Page 6 
hand and associated lateral epicondylitis in 2004, she was released from care on October 25, 2004, without restrictions and returned to her cable assembler job.
5. After returning to work at Volex, Plaintiff continued to experience problems with her hands and arms.
6. Plaintiff was laid off by Volex on June 22, 2005, when the assembly jobs were relocated out of the country.
7. Plaintiff remained unemployed until she began working for Adecco on February 8, 2006.
8. While working for Adecco at Corning Cable, Plaintiff's hand and arm conditions worsened and she became unable to continue working. In particular, Plaintiff testified that the twisting of caps covering connectors on the cables made her hands hurt. According to testimony from Michael Midgett, production supervisor at Corning Cable, both the polarity testing and leak testing of the cables involved twisting and untwisting an outer housing over cable connectors. Plaintiff would perform both tests on about 65 to 75 cables during an 8-hour shift.
9. Plaintiff presented to her primary care physician, Dr. Mark Hawkins, on March 6, 2006, with complaints of right elbow pain. She was referred to Dr. Robert L. Liljeberg, Jr., an orthopaedist, for further evaluation.
10. Dr. Liljeberg treated Plaintiff for right arm pain and right epicondylitis beginning March 30, 2006. Dr. Liljeberg prescribed physical therapy and ordered NCV/EMG testing, which was negative. On April 18, 2006, Dr. Liljeberg indicated that Plaintiff's problems, including right elbow lateral epicondylitis, were non-surgical. He offered a pain management referral and released Plaintiff from care. *Page 7 
11. On May 30, 2006, Plaintiff filed two Forms 18 alleging repetitive motion injury to her arms, hands, and elbows. One named Defendant-Employer Volex with a date of injury of June 22, 2005 (I.C. File No. 627619), and the other named Corning Cable Systems with a date of injury of March 17, 2006 (I.C. File No. 627634). Corning Cable Systems was subsequently dismissed and Adecco and Broadspire were added as defendants.
12. On June 5, 2006, Plaintiff presented to Dr. Scott McCloskey, a neurosurgeon, with complaints of bilateral hand pain and numbness, right worse than left. Dr. McCloskey's impression was industrial-related carpal tunnel syndrome, quite severe on the right, with possibly some degree of ulnar nerve involvement on the right. He recommended a surgical release of the right carpal ligament and possibly ulnar nerve decompression at the elbow.
13. Dr. McCloskey performed a right carpal ligament release on August 2, 2006. On September 20, 2006, physical therapy was recommended. She was continued out of work until her next appointment in eight weeks.
14. On December 4, 2006, Plaintiff presented symptoms of triggering in the right thumb. She was referred to Dr. Timothy Kirkland, a partner of Dr. Liljeberg, who recommended surgical repair.
15. On February 19, 2007, Plaintiff indicated to Dr. McCloskey that she could not afford the recommended thumb surgery. He indicated that she had reached MMI as to her right carpal tunnel release and sustained a 5% permanent partial disability rating. He also recommended evaluation for ulnar nerve entrapment and surgical repair, if needed. Plaintiff was continued out of work. At a follow-up appointment on October 10, 2007, Plaintiff continued to have problems with her thumb. Dr. McCloskey indicated that she was unemployable at that time and would likely remain so without further treatment. *Page 8 
16. In his deposition, Dr. McCloskey indicated that his practice is 20-30% devoted to the upper extremities. He performs 50-60 carpal tunnel surgeries and 50-60 ulnar nerve surgeries each year. Dr. McCloskey testified that, to a reasonable degree of medical certainty, Plaintiff's occupation at both Volex and Adecco were substantial causative factors of her hand and arm problems. According to Dr. McCloskey, such occupations create a greater risk of those conditions than the general population, not similarly exposed, experiences. Dr. McCloskey stated specifically that Plaintiff's problems started with her work at Volex, but then were made worse when she tried the job through Adecco, causing them to resurface to the extent that she could not continue with the new job. Dr. McCloskey testified that Plaintiff's work through Adecco augmented her pre-existing carpal tunnel syndrome. Dr. McCloskey was provided with a videotape of Plaintiff's position at Volex, but not her job at Adecco. Counsel for Adecco described the differences between the two jobs and, although Dr. McCloskey admitted that the tasks did not sound repetitive as described, he continued to opine that Plaintiff's work at Adecco augmented her condition because her symptoms worsened there to the point that she could not continue working. Dr. McCloskey indicated that a hand surgeon should provide an opinion on the causation of Plaintiff's trigger thumb. With respect to Plaintiff's ongoing disability, Dr. McCloskey indicated that it was caused by both her continued wrist pain due to carpal tunnel syndrome and her right trigger thumb.
17. Dr. McCloskey further opined that Plaintiff's right ulnar nerve entrapment was related to an incident she reported involving banging her elbow on a chair at work. This incident does not appear to be at issue in this case. The Full Commission finds that the right ulnar nerve entrapment for which Dr. McCloskey treated Plaintiff is not related to the occupational diseases alleged in this case. *Page 9 
18. Defendants sent Plaintiff's medical records to Dr. George Edwards, a hand surgeon, for a records review on February 6, 2007. Dr. Edwards was provided a written job description for Plaintiff's position for Adecco. The description indicated that the job required simple grasping, fine manipulation, and use of machinery or tools, including multiple hand tools, splicer, test carts, PUD, and reel handling. Dr. Edwards stated in his response letter that it did not appear from the job description that these tasks were repetitive enough to cause carpal tunnel syndrome or an occupational disease of the hand. He stated that the work may have temporarily aggravated her condition, but did not cause it. He also did not think that her employment placed her at an increased risk of developing bilateral carpal tunnel syndrome. Dr. Edwards testified in his deposition that a video of the job would have been helpful to determine whether the job required strenuous use of the hands. Dr. Edwards agreed on cross-examination that the types of hand use required by the job could lead to carpal tunnel syndrome.
19. Dr. Bruce Minkin, a hand surgeon, performed a second opinion examination at the request of Defendants on November 26, 2007. His impression was right lateral epicondylitis and trigger thumb, right thumb IP joint arthiritis, and questionable carpal tunnel syndrome and questionable ulnar nerve compression at the right elbow. He recommended repeat NCV/EMG studies. He did not think she could go back to repetitive work activities on an assembly line. She had a thorough workup with unfortunate continued dysfunction. Dr. Minkin agreed with the 5% disability rating. In his deposition, Dr. Minkin testified that continued exposure to repetitive assembly line work can worsen tendonitis and carpal tunnel syndrome.
20. Dr. Robert W. Hart, III, of Hart Industrial Clinic has 40 years' experience in industrial medicine. He is board-certified in internal medicine. He testified that he has treated too many cases of carpal tunnel syndrome to count. Dr. Hart testified that there is a relationship *Page 10 
between tendonitis and carpal tunnel syndrome in that the inflammation of a tendon that runs through the carpal tunnel can put pressure on the median nerve. Dr. Hart stated that the degree of repetition required to produce carpal tunnel syndrome is extremely variable depending on the age of the patient, type of motion, and other factors. He further indicated that once epicondylitis and tendonitis are established they can be easily worsened by a job similar to the one in which they developed.
21. Upon review of the medical and other evidence and expert testimony, the Full Commission assigns greater weight to the opinion of Dr. McCloskey as Plaintiff's treating physician than the opinion of Dr. Edwards, who did not examine Plaintiff. The Full Commission also accords significant weight to the opinions of Drs. Hart and Minkin as to the issues of causation and disability.
22. The Full Commission finds as fact that Plaintiff's jobs at Volex and Adecco placed her at a greater risk of contracting carpal tunnel syndrome and epicondylitis than members of the general public not so employed. The Full Commission finds as fact that Plaintiff's hand and arm conditions were initially caused by her work at Volex and then augmented by her work for Adecco. The Full Commission further finds that Plaintiff sustained her last injurious exposure to the hazards of carpal tunnel syndrome and epicondylitis in her position with Adecco.
23. Lastly, the Full Commission finds that Plaintiff has been unable to work since being written out of work by Dr. McCloskey on July 31, 2006. Her current disability is due at least in part to her work-related carpal tunnel syndrome.
24. With respect to the argument that Plaintiff should be barred from receiving compensation for failure to comply with N.C. Gen. Stat. § 97-22, the Commission finds that *Page 11 
Plaintiff was first informed that she had an occupational disease in relation to her employment with Adecco on June 5, 2006. She filed a timely Form 18 on May 30, 2006, though she named Corning Cable Systems as the employer. Adecco and Broadspire were substituted as defendants within a few months. In addition, per the testimony of Adecco's Branch Manager Ann Wilson, Plaintiff reported her condition in June 2006. Therefore, the Full Commission finds that Adecco and Broadspire had actual notice of the claim, thus reasonably excusing any failure to give written notice by Plaintiff. There was no prejudice to Defendants Adecco and Broadspire.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him to a greater risk of contracting the disease than the public generally. Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the development of the disease.Hardin v. Motor Panels, Inc.,136 N.C. App. 351, 524 S.E.2d 368; disc. review denied,351 N.C. 473, 543 S.E.2d 488 (2000). Where the condition was aggravated but not originally caused by the claimant's employment, a claimant must show that the employment placed him at a greater risk for contracting or developing the condition. Futrell v. ResinallCorp., 151 N.C.App. 456, 566 S.E.2d 181 (2002), aff'd percuriam, 357 N.C. 158, 579 S.E.2d 269 (2003). "In a case where an employee suffers from a compensable occupational disease, `the employer in whose employment the employee was last injuriously exposed to the hazards of such disease . . . shall be liable.' N.C. Gen. Stat. § 97-57 (1999). `It is not necessary that the exposure to the hazard either caused or significantly *Page 12 
contributed to the development of the occupational disease; it is enough if the exposure augmented the disease process.'"Anderson v. Gulistan Carpet,Inc., 144 N.C.App. 661, 550 S.E.2d 237 (2001) (quotingHarris v. North American Products,125 N.C.App. 349, 353, 481 S.E.2d 321, 323 (1997)).
2. Plaintiff contracted the occupational diseases of bilateral carpal tunnel syndrome and right lateral epicondylitis as a result of her employment with the Defendant-Employer Volex. Plaintiff's subsequent employment with Defendant-Employer Adecco augmented these conditions and was her last injurious exposure to the hazards of carpal tunnel syndrome and epicondylitis. Both positions placed Plaintiff at a greater risk of contracting carpal tunnel syndrome and epicondylitis than members of the general population who are not exposed to that type employment. N.C. Gen. Stat. §§ 97-53(13), 97-57.
3. As a result of her compensable bilateral carpal tunnel syndrome, Plaintiff has been unable to work since July 31, 2006, and is entitled to temporary total disability compensation as of that date. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to medical treatment for her compensable occupational diseases as is reasonably necessary to effect a cure, provide relief, or tend to lessen her disability, including an evaluation with a hand surgeon regarding the causation of Plaintiff's trigger thumb. N.C. Gen. Stat. § 97-25.
5. N.C. Gen. Stat. § 97-22 provides that an injured employee shall give the employer written notice of the accident. Compensation to an injured employee is not payable unless the employee provides the written notice within 30 days after the occurrence of the accident, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied the employer has not been prejudiced thereby. N.C. Gen. Stat. § 97-22. *Page 13 
An employer is not prejudiced by a plaintiff's failure to provide written notice of an injury within 30 days when defendant had actual notice of plaintiff's injury. Sanders v. Broyhill FurnitureIndustries, 131 N.C. App. 383, 507 S.E.2d 568 (1998). For most occupational diseases, N.C. Gen. Stat. § 97-58 establishes that the time within which an employee must give such notice begins to run when he or she is first advised by competent medical authority of the nature and work-related cause of the disease. McKee v.Crescent Spinning Co., 54 N.C. App. 558, 284 S.E.2d 175 (1981). Under the circumstances of this case Adecco and Broadspire had actual notice of the claim, reasonably excusing any failure by plaintiff to provide written notice. There was no prejudice to Defendants Adecco and Broadspire.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants Adecco and Broadspire shall pay Plaintiff temporary total disability compensation at the rate of $226.43 per week, beginning July 31, 2006, and continuing until further Order of the Commission. Accrued compensation shall be paid in a lump sum.
2. An attorney fee for plaintiff's counsel of 25% is approved from the above compensation. The attorney fee from accrued compensation shall be paid directly to Plaintiff's counsel in a lump sum. Thereafter, every fourth check shall be forwarded to Plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred after March 17, 2006, or to be incurred by Plaintiff as a result of her compensable occupational diseases, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, or tend to lessen Plaintiff's period of disability, when bills for same have been submitted *Page 14 
and approved by the Industrial Commission, including an evaluation with a hand surgeon regarding the causation of Plaintiff's trigger thumb.
4. Defendants shall pay the costs.
This the ___ day of March 2010.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1